## Ashley Wire Company et al. v. Illinois Steel Company.

1. FORECLOSURE—*Of Mortgages by Corporations.*—On the trial of a foreclosure suit against a corporation, the production in evidence of a note signed by such corporation under the hand of its president, attested by its secretary, and also the mortgage securing the payment of such note, duly executed by the corporation under the hand of its president and its corporate seal, attested by its secretary, etc., makes out a *prima facie* case that the note and mortgage are valid obligations of the corporation and executed by authority. The burden of showing that they were not so executed is upon the defendant.

2. CORPORATIONS—*Mortgages by—What Irregularities are not Available as Defenses.*—The fact that a note and mortgage given by a corporation to secure the payment of an existing indebtedness were executed by its officers under authority conferred at a meeting of its board of directors not regularly convened in accordance with its by-laws, and held at a place not authorized by such by-laws, and the special provisions of the mortgage, such as declaring the debt due on default in payment of interest, were not binding, because not specified in the record of the meeting, is not available as a defense in a suit to foreclose the mortgage, after such mortgage has become binding by ratification.

3. SAME—*Irregular Acts—Become Valid by Acquiescence and Ratification.*—A note and mortgage to secure an existing indebtedness, executed by the officers of a corporation under authority conferred at a meeting

of its board of directors, not regularly convened in accordance with its by-laws, the repudiation of which has not been authorized by the directors or stockholders of the corporation, becomes valid and binding by acquiescence and ratification.

4. SAME—*Place of Business.*—In the absence of any prohibition, the ordinary business of a corporation may be done at any place.

5. SAME—*Strangers Dealing with Officers, Protected.*—The necessities of business require that the public dealing with the officers of a corporation in good faith, on the strength of apparent power, should be protected against such claims as merely affect the regularity of the calling of meetings of the board of directors, etc.

6. NOTICE—*Presumptions When Sent by Mail.*—Proof that a notice of a stockholders' meeting was deposited in the postoffice, properly directed and postage prepaid, is *prima facie* evidence that it was received by the person to whom it was addressed. The presumption of its receipt is founded upon the regularity and certainty with which the mail is carried and delivered, and such presumption is not overcome by the mere failure of the person to whom such notice was addressed to recollect, or his impressions on the subject.

7. BY-LAWS—*Place of Holding Meetings.*—A by-law of a corporation which requires that regular meetings of the board of directors shall be held at the home office of the corporation, does not apply to special meetings.

8. RUBBER STAMP—*For Official Signatures.*—The fact that the signature of the secretary of a corporation to a notice of a meeting of the board of directors was made with a rubber stamp, held by the hand of the president, does not invalidate the acts done at the meeting, where the secretary attends the meeting and treats the notice as valid.

9. CORPORATE ACTS—*The Rule as to Strangers.*—The rule in regard to the rights of strangers to corporations dealing in good faith with their officers in the exercise of apparent power conferred upon such officers as agents of the corporation, against claims that the acts of such agents were not in fact legally authorized, does not apply to a case where the act is the execution of a mortgage to secure the payment of an existing debt due and unpaid.

**Foreclosure of Mortgage.**—Error to the Circuit Court of Will County; the Hon. DORRANCE DIBELL, Judge, presiding. Heard in this court at the May term, 1895. Affirmed. Opinion filed September 9, 1895.

GEORGE S. HOUSE, attorney for plaintiffs in error, contended that the rule is substantially universal that a board of directors of a corporation can only act in a meeting duly convened, and that the action of a majority, when the assent of each is separately obtained, or when given in a meeting not duly convened, is invalid, and not binding upon the cor-

Ashley Wire Co. v. Illinois Steel Co.

poration. Simon v. Sevier Assn., 54 Ark. 58; Stow v. Wyse, 7 Conn. 214; Baldwin v. Canfield, 26 Minn. 43; Hessington v. District Township, 47 Iowa 11; Dey v. Mayor, 19 N. J. Eq. 412; Commonwealth v. Cullen, 13 Penn. 133; Stoystown v. Carver, 45 Pa. St. 386.

If the manner of serving notice of corporate meetings be prescribed by statute, charter or by-law, a strict compliance with the provisions thereof must be observed, and is necessary to the validity of the business transacted at any meeting. Beach on Private Corporations, Sec. 281.

Notice to specify time, place and purpose of meeting. The notice of a corporate meeting should specify the place and time at which it is held. The time should be definitely stated to be on a certain day at a certain hour. This is ordinarily all that is required, and when only the usual course of business is to be carried out no notice of the questions to be considered need be given; but when the purpose of the meeting is to consider some matter outside of the usual routine of business, the notice should set forth the nature of the business to be transacted. It is not necessary, however, that a notification should be drawn up with all the formality of a special plea. All that is required is, that it should be so expressed as that the members may fairly understand the purpose for which they are to be convened. Beach on Pri. Corpor., Sec. 283.

Where the by-laws and the resolution calling a special meeting of the board, require that notice of such meeting shall be given each director, such notice must be given, unless waived by unanimous consent, all being present and taking part in the proceedings, otherwise the special meeting is not legally convened. Shelby R. R. Co. v. Louisville R. R. Co., 12 Buch. 62; Tuttle v. Michigan Air Line R. R. Co., 35 Mich. 247; Stevens v. Eden Meeting Home Society, 12 Vt. 688; Farwell v. Houghton Copper Works, 8 Fed. Rep. 66.

In the absence of any provision in the by-law, resolution or statute, directing the manner of service, the notice must be served personally on each director. Harding v. Vandewater, 40 Cal. 77; Stowe v. Wyse, 7 Conn. 214;

Savings Bank v. Davis, 8 Conn. 191; Tuttle v. Michigan Air Line R. R. Co., 35 Mich. 247; Pike County v. Rowland, 94 Pa. St. 238.

Proof of the mailing of a letter or notice properly addressed is *prima facie* evidence of its having been received by the party to whom it is addressed in a case where notice may be given in this mode; but this is a mere presumption of fact, which may be rebutted. Meyer v. Krohn, 114 Ill. 584; Young v. Clapp, 147 Ill. 190.

GARNSEY & KNOX, for defendant in error, Illinois Steel Company, contended that a corporation may mortgage its property to secure just debt. Sec.    , Cap. 32, R. S., Incorp. Act; Johnson v. Ward, 95 Ill. 215, 238.

The giving such a mortgage is an exercise of the ordinary powers of the directors as agents of the corporation, and may be done at any place, either at the home office of the corporation or elsewhere. Davis v. Savings Bank, 8 Conn. 191; Reichwald v. Com. Hotel Co., 106 Ill. 450, 451.

The mortgage here in question, having been executed by the proper officers, and bearing the seal of the corporation, is presumed to have been executed by authority, and the burden of proving want of authority rests upon the defendants below, plaintiffs in error here, by strict proof. Angell & A. on Corp., Sec. 516; Sargent v. Webster, 13 Metc. 504; Smith v. Smith, 62 Ill. 496; Glover v. Lee, 140 Ill. 107; McDonald v. Chisholm, 131 Ill. 281; Atwater v. Exchange, etc., Bk., 152 Ill. 620; Chateau Ins. Co. v. Holmes, 68 Mo. 601.

By the statute, the directors were required to provide for the calling of directors' meetings by by-laws. Sec. 20, Chap. 30, R. S., Incorp. Act.

A reasonable time to attend a meeting, is time to reach the place of meeting by ordinary routes of travel, after receipt of notice. Covert v. Rogers, 38 Mich. 363.

A notice having been given to each director in time to have attended the meeting, it does not matter whether the signature of the secretary attached to the notice was at-

tached by him or by another party. Samuel v. Holladay, Woolworth, 400; 1 Am. Corp. Cases, 146.

The call issued for the meeting was formal, under the by-laws, and the fact that it was not stated that the giving a mortgage might be discussed, does not vitiate the call, because, first, the by-laws do not require the object of the meeting to be stated; second, the giving a mortgage is only ordinary business, and when only ordinary business is to be transacted, even at an extraordinary meeting, the special object need not be stated. Davis v. Savings Bank, 8 Conn. 192; Reichwald v. Hotel Co., 106 Ill. 450, 451; Green's Brice's Ultra Vires, 354, note; Samuel v. Holladay, Woolworth 400; Granger v. Original, etc., Co., 59 Cal. 678.

Where the statute or by-law prescribes the form of the notice to be given of a directors' meeting, a notice need not specify the object of the meeting, unless the statute or by-law requires it. Zabriskie v. C. C. & C. R. R., 64 U. S. 381; L. Ed., Book 16, 496, 498; Granger v. Original Mill Co., 59 Cal. 678; 18 Am. Ency. Law, 85; Samuel v. Holladay, Woolworth 400; 1 Am. Corp. Cases, 146.

Even in cases where the decision has turned upon common law principles, the distinction is made between extraordinary meetings called for ordinary business, of which no special notice of the business to be transacted need be inserted in the call, and ordinary meetings, at which extraordinary business is to be transacted, of which it is said notice should be inserted in the case. Green's Brice's Ultra Vires, 354, note.

Thus the giving a mortgage is ordinary business, which may be transacted at a special meeting, and the notice, if consistent with the by-laws, need not specify the object of the meeting. Davis v. Savings Bank, 8 Conn. 191; Reichwald v. Hotel Co., 106 Ill. 496.

The service of notice by mail is sufficient, and would have been if it had never reached Mr. Hagar. Chase v. Tuttle, 3 Am. St. Rep. 64; 55 Conn. 455; 12 Atl. Rep. 874; Corbett v. Woodward, 5 Sawyer 403; Williams v. German Ins. Co., 68 Ill. 390; Covert v. Rogers, 38 Mich. 363.

The mailing of the notice to Hagar, the absent director, being proved, a presumption arises that he received it in due course of mail. 1 Greenl. Ev., Sec. 40; Huntly v. Whittier, 105 Mass. 392; Oregon Steamship Co. v. Otis, 100 N. Y. 446; 3 N. E. Rep. 495; Marston v. Bigelow, 150 Mass. 45; 22 N. E. Rep. 71; Meyer v. Krohn, 114 Ill. 474, 586.

And on this question of fact, the court below having found for defendant in error, the hearing being in open court, the Appellate Court will not reverse unless there is a clear preponderance of evidence against the finding. Ingalls v. Rowell, 149 Ill. 167, 168.

Ratification by acquiescence may be made by a corporation, as well as by an individual. Connett v. Chicago, 114 Ill. 239; Green's Brice's Ultra Vires, 467; Sherman v. Fitch, 98 Mass. 59; Manhattan Hardware Co. v. Thalen (Pa.), 18 Atl. Rev. 428; Hoyt v. Thompson's Exr., 19 N. Y. 287.

It is submitted that this mortgage, having been received in good faith by the steel company, and being given to secure a *bona fide* debt, and all necessary formalities having been complied with by the officers who executed it, neither the corporation nor any stockholder, judgment creditor or other person can question its validity. Bank v. North, 4 Johns. Chy. 370; Bank v. Matthews, 93 U. S. 621; Jones v. N. Y. Guaranty Co., 101 U. S. 622; Manhattan Hardware Co. v. Phalen, 128 Pa. St. 110; 18 Atl. Rep. 428; Harvey v. Ill., etc., Ry. Co., 28 Fed. Rep. 174; Ottawa Plk. Road v. Murray, 15 Ill. 336; Aurora Agl. Soc. v. Paddock, 80 Ill. 263–266; Thomas v. Citizens Horse Ry. Co., 104 Ill. 467; Wait v. Smith, 92 Ill. 390.

Mr. Justice Cartwright delivered the opinion of the Court.

Defendant in error filed its bill March 7, 1894, in the Circuit Court of Will County, to foreclose a mortgage executed July 19, 1893, by the Ashley Wire Company, by the hand of C. H. Carpenter, its president, under its corporate seal, attested by James R. Ashley, its secretary, and recorded on the same day in the recorder's office of said county where

the mortgaged premises were situated, securing the payment of a promissory note for $67,246.24, due in two years with interest at five and one-half per cent, and providing for the insurance of the buildings on the mortgaged premises in the sum of $30,000 for the benefit of the mortgagee. It was stipulated in the mortgage that in default of payment of interest when due the whole principal and interest should, at the option of the mortgagee, become due and the mortgage be foreclosed; and it was alleged in the bill that default had been made in the payment of interest due January 19, 1894, wherefore the mortgagee had elected to declare the whole indebtedness due. The other plaintiffs in error were made defendants with the Ashley Wire Company under averments that they had, or claimed, some interest in the mortgaged premises, which it was alleged were subject to the mortgage. It was also averred that the Ashley Wire Company was insolvent, and that George W. Bush had been appointed receiver of its property and estate in pursuance of a bill filed for that purpose by the First National Bank of Joliet.

The Ashley Wire Company answered the bill, admitting that on July 19, 1893, it was largely indebted to the complainant, and that on that day the mortgage in question was duly recorded in the recorder's office of Will county purporting to be executed by it to secure such indebtedness, but insisting that the mortgage was not binding on it because its officers acted without lawful authority in the execution of such mortgage. It was admitted that Bush was receiver of the company, and it was claimed that when the mortgage was executed the company was insolvent, and that complainant was aware of that fact.

The First National Bank of Joliet, John Y. Brooks and the Will County National Bank of Joliet filed answers, claiming rights as judgment creditors, and denying the validity of the mortgage.

George W. Bush answered as receiver, setting up his appointment as such receiver and his possession of the property, and neither admitting nor denying the other allegations of the bill.

Replication having been filed, the proofs were heard by the court, and a decree was entered finding that the mortgage was a valid and binding security and for a foreclosure of the same, and a sale of the mortgaged premises to pay the sum of $72,752.86, being the amount due on the note together with moneys advanced by complainant for insurance and interest thereon, and $500 solicitor's fees, all of which were provided for by the terms and conditions of the mortgage. The only question in the case is whether the note and mortgage were binding obligations of the Ashley Wire Company.

At the hearing, the complainant produced and offered in evidence the note described in the bill, dated July 19, 1893, for $67,246.24, payable two years after date, with interest payable semi-annually at five and one-half per cent, signed by the Ashley Wire Company under the hand of C. H. Carpenter, its president, attested by J. R. Ashley, its secretary; and also the mortgage in said bill described securing the payment of said note with the provisions above stated, duly executed by the Ashley Wire Company under the hand of its said president and its corporate seal attested by its said secretary, together with the certificates of acknowledgment and recording thereof, in accordance with the averments of said bill. Complainant also proved that default was made in the payment of the installment of interest due January 19, 1894; that the Ashley Wire Company had no insurance on the mortgaged property after January 1, 1894, and that complainant effected such insurance and paid $1,500 in premiums on account of the same. It was then agreed by the defendants that if complainant was entitled to a decree of foreclosure it should recover $1,500, and $69.44 interest thereon for insurance premiums.

By this proof the complainant made out a *prima facie* case that the note and mortgage were valid obligations of the Ashley Wire Company, executed by its authority, and the defendants took upon themselves the burden of proving that it was not so executed. Smith v. Smith, 62 Ill. 493; Sawyer v. Cox, 63 Ill. 130; Wood v. Whelen, 93 Ill. 153;

McDonald v. Chrisholm, 131 Ill. 273; Glover v. Lee, 140 Ill.
102; Atwater v. American Exchange Bank, 152 Ill. 605.

It was contended by the defendants that the note and
mortgage were not binding on the Ashley Wire Company
because they were executed by its officers under authority
conferred at a meeting of its board of directors, which was
not regularly convened in accordance with its by-laws, and
which was held at a place not authorized by such laws, and
also that the special provisions of the mortgage, such as de-
claring the debt due on default in payment of interest were
not binding, because not specified in the record of the meet-
ing.   To support these claims the defendants offered evi-
dence, and the proofs established the following facts :   The
by-laws of the Ashley Wire Company provided that its busi-
ness should be managed by a board of seven directors, to be
elected by the stockholders at their annual meeting to be
held on the first Thursday after the 10th day of July, in
each year.   The officers of the company were a president,
secretary and treasurer, to be appointed by the board of
directors from their own number as soon as practicable after
the election of such board.   The by-law regulating meetings
of the board of directors is as follows :   " 4th.   Regular
meetings of the board of directors shall be held quarterly,
the first Thursday in the month, commencing October 5,
1882, at the office of the company in Joliet.   The president
or any two directors shall have the authority to call special
meetings of the directors, when in his or their judgment he
or they think the interests of the company demand their
attention.   And he or they shall require the secretary to
give a reasonable notice to such directors in writing, or in
person, of the time of such meeting, and at each regular or
called meeting the secretary shall present a full report of
the business transacted since the previous meeting of the
board.   Four directors shall constitute a quorum to do busi-
ness at all meetings."   There was also a resolution of the
board that the notice to directors should be in writing.

An annual meeting of the stockholders was held at the
office of the corporation in Joliet, July 13, 1893, at which

H. S. Smith, S. H. Sweet, C. H. Conover, E. C. Hagar, Charles Pettigrew, C. H. Carpenter and J. R. Ashley were elected directors. Immediately on the adjournment of the stockholders' meeting, the board of directors met, all being present except Hagar. At that meeting C. H. Carpenter was elected president, and J. R. Ashley was elected secretary. The president and C. H. Conover and S. H. Sweet were appointed a committee to confer with complainant, the Illinois Steel Company, concerning its request for the cancellation of a contract, under which the Ashley Wire Company had been buying wire rods from complainant, and the committee was directed to make such arrangements for the adjustment of the account due complainant as might be thought best, and to report at the next meeting of the board of directors. The board then adjourned, subject to the call of the president.

The committee so appointed conferred with complainant, and on July 15, 1893, the president called a meeting of the board of directors, of which a notice was mailed to each director July 15, 1893, except the president and secretary. The notice mailed to the director Hagar was as follows:

" July 15, 1893.

E. C. Hagar, Esq., Bay View, Mich.

Dear Sir: Pursuant to adjournment, the directors of the Ashley Wire Company are hereby requested to meet Wednesday, July 19, 1893, at the hour of 1 p. m., at the Union League Club rooms, Chicago.

Matters of importance will be brought before this meeting for consideration, and a full attendance is requested.

J. R. Ashley, Secretary.

By order of the president."

The other notices were the same as this, except in the address. The president wrote the notices, and affixed the name of the secretary by means of a rubber stamp which was in the office of the corporation. In pursuance of the notice, a meeting was held at the time and place therein mentioned. H. S. Smith and Charles Pettigrew, two of the directors, sent to that meeting their resignations as directors,

because they were directors of the Illinois Steel Company, and deemed it improper to act in the matter of its claim. E. C. Hagar did not attend the meeting, but S. H. Sweet, C. H. Conover, C. H. Carpenter and J. R. Ashley, the remaining directors, were present and participated in the meeting, and its proceedings were duly entered in the records of the corporation. Every director either received written notice of the meeting or was present and took part in it, unless the notice mailed to Hagar failed to reach him. The account with complainant was adjusted and was then due; the rate of interest to be paid was agreed upon by conference with the officers of complainant, the extension of time and security was agreed upon, and the execution of a note and mortgage for the unpaid account, due on or before two years from date, with interest at five and a half per cent, was authorized.

The alleged illegality in convening this meeting of July 19th, consists in the want of a statement in the notice of the particular business to be done at the meeting, the fact that the president affixed the secretary's name and sent the notice by mail, and a claim that the notice was not received by the director Hagar. It is also argued that the meeting could only be held at the office of the corporation at Joliet.

In our judgment a defense of this character is not now available to the defendants. The act sought to be impeached was within the general powers of the board of directors, and it has never been disavowed by the corporation. The record of the meeting of July 19th is the last entry in the record book of the corporation. No meeting of directors or stockholders has been held, and no action has been taken by the corporation or any director or stockholder in disaffirmance of the proceedings at that meeting, or in repudiation of the note or mortgage. The record of the meeting in the book of the corporation was notice to its members, and the mortgage was recorded on the day of its execution. If the notice mailed to Hagar was not received he made no objection and gave no notice of that fact, although informed by the records of the corporation and the public record of what had

been done. Those affected by the act unquestionably may, and apparently do prefer to ratify it as just and proper even if irregularly done, and of course, if that is the case, the other defendants have no right to interfere. All that has been done in the way of questioning the act of the agents of the corporation is the filing of an answer by a solicitor presumably employed and directed by the president, who executed the note and mortgage. The repudiation of its obligation has never been authorized by the directors or stockholders, and we think that the mortgage is binding by acquiescence and ratification. Atwater v. American Exchange Bank, *supra;* L. N. A. & C. Ry. Co. v. Carson, Sup. Ct. Ill. 38; N. E. Rep. 140.

But if the alleged defenses as here made are proper to be considered, the first question that arises is whether complainant can be affected by a failure of the corporate agents to observe the rules and regulations enacted for the internal management of the corporate affairs. When the mortgage was made, the records of the corporation showed that power to make it had been conferred by the governing body of the corporation having the management of its corporate affairs.

The indebtedness was created in the ordinary course of business by the purchase of wire rods from which the corporation manufactured its product. It was due and unpaid, and complainant dealt in good faith without notice of any irregularity. Defendants' claim is that the security so taken is invalidated if they are able to show that the signature of the secretary to the notices was made with a rubber stamp held by the hand of the president, or that the notice mailed to Hagar in ample time, under a presumption that he received it, was not in fact received. There are cases where it has been held essential to the validity of an instrument, that the meeting at which it was authorized, was called in accordance with the rules governing the relations between the corporation and its agents, but they have never been recognized as affecting strangers to the corporation in this State. The rules laid down in such cases originated

when the relations of corporations to the general business of the country were widely different from what they now are. Not many years ago corporations were few in numbers, and organized for the execution of enterprises beyond the scope of such capital as could be aggregated in a partnership. Such concerns were naturally ponderous and moved with much formality in the execution of their business. Their relations to the public generally were very limited. But now the every-day business of the country is transacted by corporations. Every city and village is full of them, and they have largely supplanted the partnership in the store and the shop. The necessities of business require that the public, dealing with their officers in good faith on the strength of apparent power, should be protected against such claims as are here made. The courts of this State have always protected third parties dealing in good faith with corporations within the general scope of their powers. In Smith v. Smith, *supra*, it was held that third parties dealing with a corporation are not bound by rules adopted for its government or required to know the provisions of its by-laws, which are private and only accessible to the officers of the corporation, and that a deed not countersigned by the secretary was valid although the by-laws required it to be so countersigned. In Union Mutual Life Ins. Co. v. White, 106 Ill. 67, although the corporation in that case was a foreign one, the rule was declared generally that rules and by-laws are not open to inspection by the public, and that persons not connected with the corporation are not presumed to know what they contain. We do not think that complainant was bound to know what provisions or regulations had been made by the Ashley Wire Company for convening the meeting of its agents or governing body, but had a right to assume that they had been complied with.

However, an examination of the objections shows them to be without merit. It certainly made no difference to anybody who held the rubber stamp, and if the secretary did not know when it was done, he attended the meeting, acted as secretary, recorded its proceedings, and treated it as reg-

ularly called, and its directions as binding on him.   He rati-
fied the call, and it affected nobody in any view of the ques-
tion.

It was not necessary that the notice should state the busi-
ness to be transacted, both because the meeting of July 13th
was adjourned to meet at the call of the president when the
committee appointed about this business was to report, and
the business to be transacted was ordinary business, of
which no statement was required.   It should certainly not
be regarded as extraordinary business for a corporation to
pay or secure the payment of an account contracted in the
ordinary business of the corporation.

The evidence that notice of the meeting was deposited in
the postoffice, properly stamped and addressed to Hagar, at
Bay View, Michigan, on July 15th, was *prima facie* proof that
he received it.   Meyer v. Krehn, 114 Ill. 574; Young v. Clapp,
147 Ill. 176.   This was met by testimony of Hagar that he
had no recollection of receiving the notice; that he had tried
to rack his brains, so as to be positive about it, but was not
able to be positive, and that he did not think that he re-
ceived it.   The presumption that the letter was received is
founded upon the regularity and certainty with which the
mail is carried and delivered.   When letters are properly
stamped and addressed the uniformity with which they are
received is such that the failure to receive a letter is a
very unusual circumstance, and we do not think that the pre-
sumption was overcome by mere failure of Hagar to recol-
lect, or his impressions on the subject.

The by-law was silent as to the manner in which written
notice of a special meeting of the board should be served.
If it had provided for notice by mail, it would be immate-
rial whether Hagar ever received the notice which was prop-
erly sent in due time by that method.   It would be unneces-
sary to inquire whether it was received or not.   But if the
notice was received by Hagar, it is equally immaterial by
what means it was conveyed to him.   We think that the
Circuit Court was right in finding from the evidence that
he did receive it, and therefore the method employed was
of no consequence.

The by-law required that regular meetings of the board of directors should be held at the office of the corporation in Joliet. The business done at this meeting was an exercise of a power of the board as agents of the corporation that might, in the absence of any prohibition, be performed at any place. Reichwald v. Commercial Hotel Co., 106 Ill. 439. In enacting the by-law the restriction as to place was not applied to meetings generally, but was limited to the regular meetings, and special meetings could be held at any place that would otherwise be lawful. The board had several times met in Chicago without question or objection.

As to the claim that the mortgage was invalid as to the special provisions not contained in the statutory form of mortgage, the proof is that the draft of the mortgage was present at the meeting. The record of the meeting shows that complainants' proposition was that the note should draw six per cent interest, and after a conference it was agreed to accept five and a half per cent. The draft of the mortgage is shown by the evidence to have been changed accordingly. Other provisions were talked of, and the same paper, discussed and amended, was executed on the same day. The resolution referred to the identical mortgage executed.

None of the objections made seem to us to have any force.

It is urged that the numerous cases in which the rights of strangers to corporations dealing in good faith with their officers in the exercise of apparent power conferred upon such officers as agents of the corporation, against claims that the act was not in fact legally authorized, do not apply to this case because the mortgage was made to secure an existing debt. The debt was due, and by making the mortgage the corporation obtained an extension for two years. It was not made as a donation, and we see no reason to deny complainant the right to rely on the presumption that obtain in other cases.

The decree will be affirmed.