ANDREW SMITH

*v.*

FRANK W. SMITH *et al.*

1.  CORPORATION—*acts of officers—presumption.*  In the absence of legisla-
tive enactment, or provision in their by-laws, corporations act through their
president, or those representing him.  Where an act pertaining to the busi-
ness of the company is performed by him, it will be presumed that the act
is legally done and binding upon the company.

2.  SAME—*vice-president.*  As a general rule, in the absence of the presi-
dent, or where a vacancy occurs in the office, the vice-president may act in
his stead, and perform the duties which devolved upon the president.  In
this case the charter did not mention a vice-president as an officer of the
company, but, after providing for certain officers, it authorized the com-
pany to create other officers, and the company, in its by-laws, declared there
should be a vice-president, and prescribed his duties : *Held,* that he might
perform the duties imposed upon the president in the same cases and un-
der the same circumstances as though his office had been created by the
charter.

3.  SAME—*deed by vice-president.*  Where it appeared, from the minutes of
a railroad board of directors, that a resolution was adopted directing the
president of the company to sell a tract of land and to execute the necessary
deed therefor, under the corporate seal, and the president subsequently
elected having refused to act, that the vice-president assumed to discharge
the duties of president, and, in strict accordance with the resolution, conveyed
the land by deed, under the corporate seal, signing as vice-president
and acting president of the company, but the deed was not counter-
signed by the secretary, as required in the by-laws of the company :

*Held*, that the deed was well executed, and amply sufficient to convey the title of the company.

4. SAME—*deed countersigning.* While it is usual for the secretary of such companies to attest the execution of such instruments, as the keeper of the seal, yet, if the charter of the company does not require such attestation, the deed will be good without it. Strangers dealing with the company are not required to know the provisions of its by-laws, and are not bound by them. They can only be expected to see that such an instrument is executed in the usual form by the head of the company.

5. SAME—*deed.* So, it has been held by this court that a deed executed by the president of a bank, with its seal attached, would be presumed to have been well executed and binding.

6. JUDGMENT LIEN—*notice.* Where a grantee of land had his deed duly recorded before the recovery of a judgment against his grantor, the judgment did not become a lien upon the land, and a purchaser of the same, under execution on such judgment, will acquire no title.

7. TAX TITLE—*evidence to admit deed.* On the trial of an action of ejectment, defendant offered in evidence, as paramount title, a tax deed for the premises, made in pursuance of a sale in 1859 for taxes, but did not offer to prove the steps indispensable to a valid tax sale, and did not produce the judgment and precept: *Held*, that the court did not err in rejecting the deed as evidence.

APPEAL from the Circuit Court of Madison County; the Hon. JOSEPH GILLESPIE, Judge, presiding.

The facts appear in the opinion of the Court.

The tax deed offered in evidence was upon sale in 1859.

Messrs. DALE & BURNETT & POEME, for the appellant.

Messrs. METCALF & GILLESPIE, for the appellees.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was an action of ejectment, brought by appellees, in the Madison circuit court, against appellant, to recover three eighty-acre tracts of land, situated in that county ; the declaration was in the usual form, and to it was filed the plea of not guilty ; a trial was had at the May term, 1870, and re-

sulted in a verdict and judgment in favor of plaintiffs ; a new trial was granted under the statute. At the May term, 1871, a trial was had by the court without a jury, by consent of the parties, with a like result; and defendant appeals to this court, and asks a reversal of the judgment of the court below.

Appellees proved a regular chain of title from the general government to the Mississippi & Atlantic Railroad Company, a corporation organized under the general incorporation law of 1849. To prove title in their ancestor, Sanford S. Smith, appellees read in evidence a deed purporting to be a conveyance from the company to him, dated on the 6th day of September, 1855, for the lands described in the declaration. The consideration named in the deed is three thousand four hundred and thirteen dollars and twenty-five cents; and the attesting clause is as follows :

"In witness whereof, the said Mississippi & Atlantic Railroad Company has caused these presents to be signed by their vice-president, acting as president by reason of a vacancy in the presidency, and their corporate seal to be hereto affixed the day and year first above written.

"JOHN BROUGH,

[R. R. SEAL.]　"*Vice-Pres. and Acting Pres. M. & A. R. R. Co.*"

There is no objection urged against the acknowledgment, but it is insisted that the instrument is not executed by the proper officers of the company, and was for that reason void and of no effect. It is contended that the vice-president of the company had no power to execute the deed, but that the president alone had power conferred upon him for the purpose, and that the by-laws of the company required the secretary, who was the keeper of the seal, to annex it and countersign all deeds for the conveyance of its lands.

From the minutes of the proceedings of the company, it appears that a resolution was adopted at a meeting of the directors of the company, held in the previous month of November, by which the president was directed to sell the property,

and to execute the necessary deed therefor, under the seal of the company. Brough was, at the time this resolution was adopted, the president of the company; but, at a subsequent election, he was elected vice-president, and one Rose president; but the latter refusing to act, the vice-president assumed the discharge of the duties of president.

In the absence of legislative enactment or provision made in the by-laws, corporations usually act through their president, or those representing him. He being the legal head of the body, when an act pertaining to the business of the company is performed by him, the presumption will be indulged that the act is legally done, and is binding upon the body. And, as a general rule, in the absence of the president, or where a vacancy occurs in the office, the vice-president may act in his stead, and perform the duties which devolve upon the president. And such being the case, it must be held that, as Rose refused to act as president of the company, Brough, the vice-president, could not only act as president, but it became his duty to so act in the transaction of the business of the company. Nor does it matter that the act under which the body was organized does not enumerate a vice-president as one of the officers of the company; but, after providing that there shall be a president and other officers named, it authorizes the company to create other officers. And this company, by their by-laws, declared there should be a vice-president, and imposed the duty on him of assisting the president in the performance of such duties as he might require.

In organizing such a body, such an officer is, if not essential, usually created. And this organization, having provided for and elected such an officer, we must hold that he may perform the duties imposed upon the president in the same cases and under the same circumstances that such an officer may act when the office is created by the charter of the company. We see no objection to the deed because it was signed by Brough, as there was no president of the company.

But a question is presented by appellant that the secretary omitted to countersign the deed. He is the keeper of the seal,

and his attestation usually accompanies the execution of such instruments, and is required by the by-laws of the company. But these are private, and only accessible to the officers of the company. Strangers to the company can not be bound by the rules adopted for the government of the company. The charter did not require the deed to be attested by the secretary, and persons not officers of the company can not be required to know the provisions of their by-laws. They can only be expected to see that such an instrument is executed in the usual form, and by the head of the company. In the case of *Phillips* v. *Coffee*, 17 Ill. 154, it was held that a deed signed by the president of the bank, with its seal attached, would be presumed to have been well executed, and binding and valid. And the same rule was announced at the present term in the case of *Sawyer* v. *Cox*, where the question arose as to the sufficiency of a deed executed by a railroad company.

Again, the resolution of the board of directors, adopted on the 9th day of November, 1854, authorized the president to sell this land, " and to execute the necessary deed therefor, under the seal of the company." Here we find clear and explicit authority conferred by the company to convey, and we find the authority strictly pursued to the letter, and we perceive no reason in law or justice why the deed should not be held to be amply sufficient to convey the title of the company. And it appears the deed was recorded on the 10th day of September, 1855, in the proper office.

The judgment under which appellants claim to derive title, was rendered against the company on the 5th day of September, 1856, lacking but five days of being one year after the deed to the father of appellees was recorded. The judgment did not become a lien on this land, so as to affect appellees' title. The purchaser under the execution acquired no title, because there was none in the road, which had been previously conveyed to the ancestor of appellees, and the deed duly recorded ; and the purchaser took with notice, and hence acquired no title.

The evidence fails to show that appellant laid the founda-

tion to read the tax deed in evidence as paramount title. He offered to prove none of the requisite steps which were indispensable to a valid tax sale. They did not produce the judgment and precept, and the court did not err in rejecting the tax deed as evidence of paramount title. Nor was it offered as color of title, nor could it be so used unless continuous payment of all taxes legally assessed, for the statutory period, with the requisite possession, could have been shown, which was not done or proposed to be proved.

A careful examination of this record fails to show any error, and the judgment of the court below must be affirmed.

*Judgment affirmed.*