HENRY R. GLOVER *et al.*

*v.*

P. J. LEE, Cashier.

*Filed at Ottawa January 18, 1892.*

1. INSURANCE—*payable to third party as his interest may appear—who entitled to the insurance money in case of loss.* A corporation being indebted to a bank, in pursuance of a prior agreement took a policy of insurance on its property, containing a provision that any loss should be payable to the bank as its interest might appear, and the policy, when issued, was, with the consent of the insurance company, transferred to the bank as security for the debt of the corporation. The company did not dispute the validity of the policy: *Held,* that the bank was entitled to the insurance money, as against an attaching creditor of the corporation.

2. SAME—*assignment to secure creditors—right of preference.* A corporation, after a loss by fire, at the instance of a bank holding its notes, with the assent of the insurance company, assigned certain policies of insurance to the bank as a further security, before any other creditors acquired any lien or took any steps to reach the assets of the debtor: *Held,* that the bank, by the assignment of the policies, acquired the right to have its debt first paid out of the insurance money, as against subsequent attaching creditors.

3. PREFERENCE OF CREDITORS. A debtor has the right to pay any or all of its creditors any debt which it owes, or it may secure one creditor

in preference to others, and, if done in good faith, such preference will be sustained by the courts.

4. CORPORATION—*power of president to bind.* As a private corporation generally acts through its president, an act done through or by him will be presumed to be authorized, unless it is shown otherwise. When an article of incorporation invests the president with power to sign all written instruments, and the corporation does not deny his power, an indorsement or assignment of insurance policies by him to a creditor will be sustained, if made in good faith.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. JOHN P. ALTGELD, Judge, presiding.

This is an appeal from a judgment of the Appellate Court affirming two judgments rendered in the Superior Court of Cook county, in favor of two intervening claimants of certain moneys sought to be recovered by the appellants, Glover and Willcomb, by attachment and garnishee process.

The facts necessary to an understanding of the questions involved may be stated briefly, as follows: Glover and Willcomb commenced an attachment suit in the Superior Court of Cook county, against the Dubuque Mattress Company, an Iowa corporation, and caused the attachment to be served on eight insurance companies, as garnishees. The companies answered the interrogatories, each admitting the issuance of a policy to the said Dubuque Mattress Company, a loss thereunder, and that the loss had been adjusted at $500 on each policy. Two of the companies stated, in their answers, that their policies contained a clause, "Loss, if any, payable to Commercial National Bank, as its interest may appear." The other six companies set up a notice to them of the assignment of their respective policies, on or about the 2d of April, the loss having occurred on April 1, 1889, to P. J. Lee, the cashier of the German Bank of Dubuque, Iowa. Judgment was rendered against the Dubuque Mattress Company, and in favor of the plaintiff, for $1581.20, on May 20, 1889, and, in re-

sponse to a notice ordered by the court to be served upon the Commercial National Bank and P. J. Lee, cashier of the German Bank, interpleaded, setting up their respective claims to the money on the different policies of insurance, and upon a trial by the court, without a jury, judgments were rendered against the eight insurance companies for $500 each, in favor of the Dubuque Mattress Company, for the use of E. P. Wells, receiver of the Commercial National Bank, for $1000, and for the use of P. J. Lee, cashier of the German Bank, for $2665.28, and for the balance of $334 for the use of the plaintiffs.

Messrs. WEIGLEY, BULKLEY & GRAY, for the appellants.

Messrs. WINDES & SULLIVAN, for the appellee.

Mr. ELBERT H. GARY, for the insurance companies, garnishees.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

We will consider first the objections to the judgment rendered in favor of Wells, receiver of the Commercial National Bank. As to this judgment the main ground relied upon to reverse it is based upon the theory that the bank had no insurable interest in the property insured.

It appears from the evidence that John Kapp and Henry Saner were engaged in business as a firm, known as the Dubuque Mattress Company. The firm borrowed of the Commercial National Bank $1000, and gave its demand note, signed by the Dubuque Mattress Company, payable to the order of John Kapp, and indorsed by him to the bank. At the time the loan was made and the note given to the bank, it was agreed that the property of the firm should be insured and the policies assigned to the bank, in an amount sufficient to secure the indebtedness of the bank. In 1884, after this arrangement was made, Kapp and Saner, with others, organized a corporation known as the Dubuque Mattress Company,

and the business of the firm was transferred to the corporation, and the corporation agreed to continue the business and pay all the liabilities of the firm. Kapp was elected president of the corporation, and in pursuance of the agreement with the bank two policies of insurance were issued to the Dubuque Mattress Company, for $500 each, on the property of the corporation, containing this clause: "Loss, if any, payable to Commercial National Bank, as its interest may appear." These policies were never in the possession of the corporation, but when issued they were delivered directly to the bank, and held by the bank as security for the loan due from the corporation to the bank. The bank also held as collateral security for the loan $2500 of the stock of the corporation.

There are cases holding that a stockholder in an incorporated company has an insurable interest in the corporate property. (*Seaman* v. *Insurance Co.* 18 Fed. Rep. 250, and 21 id. 778; *Warren* v. *Insurance Co.* 31 Iowa, 464.) If a stockholder has an insurable interest, as held in the cases cited, the bank holding the stock as security for money would also have the same interest. But we do not place the decision of the question involved on that ground. It will be observed that appellants, who are creditors of the Dubuque Mattress Company, are attempting to establish the fact that the two insurance companies are indebted to the mattress company for the amount of the two policies. The two insurance companies admit the existence of the policies, the loss, and that the two companies owe the amount of the policies, but say that the money belongs to the bank. There is therefore no question in regard to the validity of the policies nor in regard to the right of a recovery for the full amount of the policies, but the question is, who is entitled to the money? Are the appellants, as attaching creditors, entitled to the amount of the policies, or does the money belong to the bank, under the contract made between the mattress company and the bank at the time the policies were issued? The contract of insurance was between

the insurance companies and the mattress company, and, as said before, its validity is beyond question. The mattress company had the right to contract with the bank that the amount of the policies should, in case of fire, be paid to the bank. An agreement of that character was made long before the fire, and before any claim in favor of appellants was in existence. In pursuance of this agreement the policies, when made out, were delivered to the bank, and held by it, the policies, in confirmation of the agreement, providing, in case of loss the amount of the policies should be paid to the bank. Whether the bank had an insurable interest in the property of the mattress company was a matter of no moment. The mattress company secured the insurance, as it had the right to do. It then pledged the policies to the bank, and delivered them over in security for money obtained of the bank, and we perceive no reason why the bank may not hold the security as against an attaching creditor.

It is suggested in the argument that Wells, the receiver, did not establish a right of recovery in himself, as receiver, and that the evidence fails to show an indebtedness from the mattress company to the bank, or to Wells, as its receiver. These are controverted questions of fact, upon which the judgment of the Appellate Court is final, and hence not subject to review here.

We now come to the second branch of the case, which involves the validity of the claim of Lee, cashier of the German Bank. Various grounds are relied upon to defeat the assignment of the six policies to the German Bank. It appears from the evidence contained in the record, that the mattress company had borrowed $3000 of the German Bank of Dubuque, for which the bank held the notes of the company. On the morning after the fire, Lee, who was cashier of the bank, called on Kapp, president of the company, for security for the debt due the bank. Kapp hesitated, but upon being pressed by the bank he finally agreed to assign to Lee, as cashier, the

six policies of insurance. Accordingly a written assignment was made on each policy, and executed by Kapp, as president of the company. The policies were then delivered to Lee, who called on the agents of the respective companies and gave notice of the assignment, and the assignments were approved by the agents by written indorsements on the policies.

It is claimed that the president of the company had no authority to make the assignment. As a general rule, corporations act through their presidents, and an act done through the president will be presumed to be authorized, unless shown to be otherwise. (Morawetz on Corporations, sec. 538; *Smith* v. *Smith,* 62 Ill. 493; *Mitchell* v. *Deeds,* 49 id. 424; *Kraft* v. *Freeman,* 87 N. Y. 628.) In addition to the fact that Kapp was president and treasurer of the company, the eighth article of the incorporation of the company provides, "that all commercial paper and other written instruments shall be signed or indorsed by, and all contracts made by or with, the president or secretary of the corporation, acting jointly or separately, and in no other manner." The acts of the president are not disputed by the corporation, and under the general authority conferred upon a president of a corporation, in connection with the authority conferred by the act of incorporation, the assignment will be presumed to have been made by authority.

It is also claimed that a pre-existing debt was not a sufficient consideration for the assignment. The mattress company had the undoubted right to pay any or all of its creditors any debt which it justly owed, or it might secure a creditor. Here the policies were in good faith transferred to the bank, a creditor, with the approval of the insurance companies, before any other creditor acquired any lien or took any steps to reach the assets of the mattress company, and we are aware of no principle which would prevent the bank from securing its debt in the mode adopted. But aside from this, in Iowa, the State where this transaction occurred, the Supreme Court hold.

that a pre-existing debt is a valid consideration to support the assignment of a chose in action. (*Moore* v. *Lewey*, 25 Iowa, 336.) When the bank saw that its debt was in danger of being lost, on account of the destruction of the property of the corporation by fire, it had the undoubted right to obtain security for the debt from the mattress company, and the mattress company had the right to secure one creditor in preference to another, if it saw proper, and a transaction of this character, based upon a sufficient consideration and made in good faith, as was the case here, will be sustained.

The defendant, Lee, has assigned certain cross-errors on the record. In the Superior Court, Lee, as cashier of the bank, was protected in the money due on the policies of the six insurance companies assigned to him, to the extent of the debt of the bank which the policies were assigned to secure. This was all that the bank was entitled to, and whether all the rulings in the Superior Court may have been correct did not prejudice the bank, and it is in no position to complain.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*