A. C. WHITE v. THE ELGIN CREAMERY COMPANY, Appellant.

**Contracts:** PRINCIPAL AND AGENT.  Where the agent of a creamery company, which purchased the stock of another company, made a public statement of the terms on which the purchasing company would receive milk from the former patrons of the creamery, delivery of milk on the faith of such statement, if authorized, constituted a contract binding on the company.

Ratification. Where the agent of a creamery company on taking charge of the creamery posted notices signed by the company, and one of its directors superintended the operation of the creamery, and daily reports were sent to the company on blanks furnished by it, and all butter shipments, with two exceptions, were made by the company as consignor to itself as consignee, and checks for the payment of its patrons who delivered milk on the faith of a proposition made by such agent were expressed by it to its servant at the creamery, such facts warranted a finding that the company operated the creamery, and hence ratified such proposition, though the same, when made, was not within the agent's authority.

Authority of president. Where the president of a corporation owning a majority of the stock acquired the stock of a creamery company, which he testified was for the ultimate benefit of the corporation, and an agent of the corporation, authorized to lease creameries, made an agreement with the patrons of the creamery purchased, an instruction, in an action against the company on such agreement, that if the president authorized the agent to make it, or if the president, as such, subsequently ratified it, he would be presumed to be authorized to confer such authority, or ratify the agent's act, was not erroneous.

Same. In the absence of any showing to the contrary, the president of a corporation will be presumed to have authority to act for it in all matters within the ordinary course of its business.

Claimed agency: *Evidence.* Where the stockholders of a creamyer company sold their stock either to S., or to the company, receipts given by stockholders, who did not surrender their certificates at the time, running to defendant, and not to S., and the statement by a person, who acted either for defendant or S. in the transfer, that he acted as agent for defendant, were admissible to show whether such agent claimed to act for S. or defendant.

Exceptions to Instructions. Where the transcript on appeal showed that both parties "excepted to each and every instruction given by the court to the jury," such statement, was a sufficient exception thereto, within Code, section 3707, providing that exceptions to the giving or refusal of instructions "may be noted by the reporter, and no reason for such exception need be given."

*Appeal from Union District Court.*—Hon. W. H. Tedford, Judge.

Monday, May 22, 1899.

Action for the balance due on a contract to pay Elgin prices for butter made from milk furnished by the plaintiff

and one hundred and fifty-one others (who have assigned their claims to him), less four cents per pound for making and marketing. The defense was a general denial. Verdict and judgment for plaintiff, and defendant appeals.— *Affirmed.*

*D. A. Porter* and *Maxwell & Winter* for appellant.

*Sullivan & Sullivan* for appellee.

LADD, J.—The patrons of the creamery were paid at the rate of eight cents per pound for eighteen thousand one hundred and sixty-five pounds of butter fat, out of which were produced twenty-one thousand six hundred and fifty pounds of butter, for which they claim Mark Sands, as agent of the Elgin Creamery Company, agreed to pay Elgin prices, less four cents a pound for making and marketing. If correct, they were entitled to ten and a half cents per pound for their butter, instead of eight cents per pound for butter fat. That Mark Sands made such a proposition to some forty of the patrons was settled by the verdict. The stockholders of the Talmage Co-operative Creamery Company had just sold all their stock, through him, to Obediah Sands, or the defendant, and it was made with reference to future dealings with all the patrons of the factory. It was a public statement of the terms under which the management would receive milk, and we think that, if authorized by the company, delivery of milk by any one on the faith of it was an acceptance, and constituted a contract binding on the defendant.

II. The patrons certainly supposed they were dealing with the Elgin Creamery Company. On taking possession, Mark Sands hung out a notice, signed "The Elgin Creamery Company," assuring them of fair treatment. Howell, an agent and director of the defendant, directed the operation of the creamery. Daily reports of the amount of milk received

and butter made were sent to the defendant on blanks fur-
nished, and instructions were given by it. It shipped
a car of coal from Des Moines to itself at Talmage,
which was used by this creamery. All the butter was
shipped by the defendant as consignor and to it as consignee,
except two shipments to another by its direction, and of
each it required notice on one of its blanks. Even the checks,
signed "Talmage Creamery Company, by O. Sands, Man-
ager," for the payment of patrons, were expressed to the
butter maker by the defendant. From these facts the jury
might have found that the defendant operated the creamery
during the month, and received all the butter made. If so,
then it ratified the agreement of its agent, Mark Sands, even
though this was not within the scope of his authority when
made, as the milk was delivered on the faith of his propo-
sition.

III.   Exception was taken to the testimony of several
witnesses to the effect that Mark Sands, in making the propo-
sition to the patrons, stated that he did so as agent of the
defendant. This could not be received as evidence
that he was in fact the defendant's agent, but was
admissible as showing in what capacity he claimed to
act at the time of the proposition,—whether for the Elgin
Creamery Company or for Obediah Sands. This is also true
of the receipts running to the defendant, given by those
present who did not have their certificates of stock with them.

IV.   The appellee, in insisting that exceptions to the
instructions had not been preserved, evidently overlooked the
change in the statute. Section 3707 of the Code expressly
provides that exceptions to the giving or refusal of
instructions "may be noted by the shorthand reporter,
and no reason for such exception need be given." See,
also, as to preservation of same in bill of exceptions, Code,
sections 3675. The transcript shows that the reporter did
note that both parties "excepted to each and every instruction
given by the court to the jury," thus confirming the correct-
ness of appellant's abstract.

V. The court gave this instruction: "You are instructed that if O. Sands, as president of the defendant company, authorized Mark Sands to do what it is claimed that he did, or that O. Sands, as president of said defendant company, afterwards ratified what Mark Sands did, that you may presume that O. Sands, as president of defendant company, was authorized to confer authority on Mark Sands to make the contract claimed to have been made, or that it would be presumed that he had authority to ratify the same after it came to his knowledge." It appeared that Obediah Sands was president of the defendant company, and owner of eighty-three per cent. of the stock, and that Mark Sands had authority to lease creameries for the defendant. This instruction related to the contract for the butter made from the milk furnished, and not to the purchase of the stock in the Talmage Co-operative Creamery Company, as contended by appellant. The agreement, if made for the defendant, was exclusively for its benefit; and the instruction, when considered in connection with others given, could only have been construed to refer to acts of Obediah Sands in behalf of the company, rather than for himself individually. While not of a very satisfactory character, there was evidence warranting such an instruction. This president testified the ultimate object in acquiring the stock was for the defendant's benefit. A few days later, in selling it again, he did so on the condition of continuing his control of the creamery the remainder of the month. Besides, he knew of the management by the defendant, and gave directions in its name. But it is said that as president he was not presumed to have the authority stated. The law, however, seems to be well settled that, in the absence of any showing to the contrary, the president of a corporation will be presumed to have authority to act in all matters arising in the ordinary course of its business. As the head of the corporation, which, of necessity, must act through some agency, the natural inference is that he, as its presi-

dent, had been endowed with the power to direct its opera-
tion, and manage the transactions for which it was organized.
*Patterson v. Robinson,* 116 N. Y. 193 (22 N. E. Rep. 372);
*Steel Works v. Bresnahan,* 60 Mich. 332 (27 N. W. Rep.
524); *National State Bank of Terre Haute v. Vigo County
National Bank,* 141 Ind. Sup. 352 (40 N. E. Rep. 800);
*Town Co. v. Swigart,* 43 Kan. 292 (23 Pac. Rep. 569);
*Getty v. Milling Co.,* 40 Kan. 281 (19 Pac. Rep. 617);
*Road Co. v. Looney,* 1 Metc. (Ky.) 550 (71 Am. Dec. 491);
*Blen v. Milling Co.,* 81 Am. Dec. 132; *Ceeder v. Lumber
Co.,* 86 Mich. 541 (49 N. W. Rep. 575, 24 Am. St. 134);
*Railroad Co. v. Coleman,* 18 Ill. 297 (68 Am. Dec. 544);
*Smith v. Smith,* 62 Ill. 493; 1 Morawetz Private Corpora-
tions, 538. See Thompson Corporation, section 4613 *et seq.*;
17 Am. & Eng. Enc. Law, 124. The statute requiring publica-
tion of the articles is said to have modified this rule. Whether
this be true as to domestic corporations, we do not determine.
It does not relate to foreign corporations. It appeared
that a part of defendant's ordinary business was the pur-
chase of creamery products, which must necessarily have
been accomplished through agents, and, if the president of
the company did not have the authority imputed to him, the
defendant should have so shown. In *Templin v. Railway
Co.,* 73 Iowa, 548, and *Griffith v. Railroad Co.,* 74 Iowa, 85,
the want of authority on the part of the president affirma-
tively appeared. We discover no error in the record, and the
judgment is AFFIRMED.