COTTON STATES BELTING AND SUPPLY COMPANY, A CORPO-
RATION, *Plaintiff in Error,* v. FLORIDA RAILWAY COM-
PANY, *Defendant in Error.*

Opinion Filed January 27, 1915.

1.  A corporation in this State has authority to execute promis-
    sory notes or other customary evidences of indebtedness as
    may be deemed necessary in the legitimate transactions of
    the business which the corporation is authorized to transact.

2.  A promissory note executed in the name of a corporation by
    its President, for its benefit and one which the corporation
    has power to authorize the President to execute or to ratify
    after it has been made, or if executed by the President in
    the ordinary course of business and within the scope of the
    authority the President is accustomed to exercise, or appa-
    rently has exercised with the consent of the corporation, is
    the corporation's obligation.

3.  A verdict of a jury should not be disturbed and a new trial
    granted where it appears that such verdict is required by
    the admissions contained in the pleadings and the evidence
    submitted.

Writ of Error to Circuit Court for Taylor County; M.
F. Horne, Judge.

Order Reversed.

*W. T. Hendry,* for Plaintig in Error;

*W. B. Davis,* for Defendant in Error.

ELLIS, J.—The Cotton States Belting and Supply Com-
pany brought suit at law in the Circuit Court for Taylor
County against the Florida Railway Company.

The declaration declares upon two promissory notes alleged to have been made and executed by the defendant payable to the plaintiff, one note dated May 5th, 1913, payable ninety days after date, and one dated September 3d, 1913, payable sixty days after date. As to the first note the declaration alleges that "on the 5th day of May, 1913, the said Florida Railway Company being then and there indebted to the plaintiff, made and executed its certain promissory note of said date;" and as to the second note, that "on the 3rd day of September, 1913, the defendant being then and there indebted to the plaintiff made and executed its promissory note of said date."

The declaration also contained Common Counts for goods bargained and sold; for work done and materials furnished, and for account stated.

Copies of the notes were attached to the declaration, also a bill of particulars under the Common Courts.

The defendant by its attorney filed two pleas: To the first count it pleaded that the notes mentioned and described in the said first count of the declaration are not its notes, and to the Common Counts it interposed the plea of never was indebted as alleged.

The case was tried upon the issues joined, on the 7th day of October 1914, at a term of the Circuit Court for Taylor County. No evidence was submitted by the plaintiff under the Common Counts of the declaration. There was a verdict for the plaintiff.

The defendant moved the court for a new trial, upon the following grounds: First, the verdict is against the evidence and the weight of the evidence; second, there was no sufficient evidence that the notes sued upon were and are the notes of the defendant; third, the verdict

is against the law of the case; fourth, there is no sufficient evidence to support the verdict, and fifth, the evidence in the case is not sufficient to overcome the plea of *non est factum.*

The court granted the motion for a new trial, and the plaintiff took a writ of error.

At the trial, the plaintiff called as a witness Frank Drew, who testified that he was President of the Florida Railway Company; that he was president of that corporation on the 3rd day of September, 1913, and on the 5th day of May, 1913. Thereupon the two notes sued upon were handed to the witness, and he said: "This is my signature to both of them." The notes were then offered in evidence and admitted over the objection of the defendant. One of the notes is dated Live Oak, Fla., Sept. 3rd, 1913, is payable sixty days after date to the order of Cotton State Belting & Supply Co. at the Citizens Bank of Live Oak, Florida, bears interest at eight per cent per annum from date, provides for payment of reasonable attorneys fees if given after maturity to an attorney for collection, provides that the makers and endorsers of the note waived demand, notice and protest, and consents that the time of payment may be extended without notice, and is signed as follows: "Florida Railway Co. By Frank Drew, President." The other note is dated Live Oak, Fla., May 5th, 1913, payable ninety days after date to the order of Cotton States Belting and Supply Co., bears interest at seven per cent per annum from date, and contains the same provisions for attorneys fees, waiver of demand, notice and protest and extension of payment, as the note first referred to, and is signed as follows: "Florida Railway Co., By Frank Drew, Pres."

Lloyd Bishop Clark, called as a witness for the plain-

tiff, testified that he was engaged in railroad business, agency work for the Florida Railway Company, lives in Perry, Florida, has been in the service of the company six years, he is local railway station agent, his duties were to receive and deliver freight, sell tickets and solicit freight and issue bills of lading; he had been in the service of the company two years in Perry, two years in Live Oak, and nearly two years at Mayo; that Frank Drew is President of the Florida Railway, is General Manager of the Railway at present, was President on Sept. 3, 1913, and May 5, 1913, and believed he was also General Manager, though witness was not sure Frank Drew was General Manager on May 5th, 1913; but was sure he was General Manager on Sept. 3, 1913. W. L. Weaver, a witness for the plaintiff, testified that he was Cashier of the First National Bank of Perry, Florida, and knows Frank Drew, the President of the Florida Railway Company. In answer to a question as to whether he had had occasion to handle notes executed by Frank Drew in the name and on behalf of the Florida Railway Company, the witness answered "Yes Sir." The question was propounded over the objection of the defendant, but the objection was overruled. The witness was asked: "Were these notes executed by Frank Drew in the name of and on behalf of the Florida Railway Company?" A. "Yes, Sir." Q. "Have any of these notes ever been paid at your bank by the Florida Railway Compnay?" A. "Yes Sir. Some of these notes have been paid; I might add, however, that these notes were personal endorsements in addition to the signature of Mr. Drew as President. They had the personal endorsement of Mr. Drew; this was during the past two or three years. These notes were paid by the Florida Railway. I don't recall how many notes. Several there have been, one or two renewed and one

or two paid. In the last two or three years one or two of said notes have been paid by the Florida Railway." The plaintiff called J. H. Parker as a witness who was not examined as to the merits of the case, and L. W. Blanton testified as to what sum would be a reasonable attorney's fee in the cause.

The above constitutes the evidence for the plaintiff, and the defendant offered none.

Did not the pleadings together with the evidence submitted, require the jury to find for the plaintiff? If they did, then it follows that the order of the court granting the defendant's motion for a new trial was error.

The plea of the defendant to the first count of the declaration was in effect a denial of the existence of the two notes sued upon. That is to say a denial that they were executed by the corporation, or by any one for and on its behalf under proper authority. The allegations of the declaration that the defendant is a corporation organized and existing under the laws of the State of Florida, and on the 5th day of May, 1913, and on the 3rd day of September, 1913, was indebted to the plaintiff are not denied. They are therefore admitted. Supreme Lodge K. P. v. Lipscombe, 50 Fla. 406, 39 South. Rep. 637.

In this State the execution of a promissory note by a corporation in the legitimate transactions of the business authorized is within the corporate powers. The right to borrow money at such rates of interest and upon such terms as its board of directors shall authorize or agree upon carries with it the power to give negotiable notes or to issue such other written customary evidences of its indebtedness as may be deemed necessary or expedient by the corporation. Reese Ultra Vires Paragraph 100; 1 Daniel on Negotiable Instruments (4th Ed.) Paragraph

381; 1 Morawetz Private Corporation, Paragraph 350; 3 Cook on Corporations, Paragraphs 760-761.

The indebtedness admitted by the pleadings to have existed against the defendant in favor of the plaintiff is presumed to be such indebtedness as the corporation was authorized under its Charter and the laws of the State, to contract. The evidence showed unmistakably that the two notes were executed by Frank Drew as President of the defendant corporation, that is that the name of the corporation was signed to the two notes by him as president. His language that "this is my signature to both of them" could bear no other interpretation reasonably and fairly. It thus appeared that the notes were executed in the name of the corporation by him as President for a debt due by the corporation to the defendant of such character as the corporation was authorized to incur. It was shown by the evidence that Mr. Drew was the president of the defendant Corporation on the dates when the two notes were executed and on the date when the second note was executed he was also the General Manager of that Corporation; that within the last two or three years Mr. Drew as president of the Corporation had executed several notes for and on its behalf; that this exercise of authority by him as president was recognized by the Corporation who paid one or two of them and renewed others. It is true that such notes bore the personal endorsement of Mr. Drew, but that fact did not affect the primary liability of the corporation.

We think that it was unnecessary under these circumstances for the plaintiff to go further and prove express authority in the President from the board of directors to execute the notes for the corporation..

In the case of McGehee Lumber Company v. Tomlin-

son, 66 Fla. 536, 63 South. Rep. 919, where it was contended that the burden was upon the plaintiff to show that McGehee as president and Scruggs as secretary of the defendant corporation were clothed with authority to employ and contract with him for the sale of its lands, this court held that such was not the law. The court referred to the case of Skinner Manufacturing Co. v. Douville, 54 Fla. 251, 44 South. Rep. 1014, where it was held that the "president of a private corporation may be presumed to have authority to employ agents to negotiate the sale of property," and said that it was still in full accord with the holdings of that case which were in effect that "prima facie" the president of a private corporation has authority to employ an agent to effect a sale of its lands, and that if the corporation in a suit against it by such agent to recover his commisions for effecting such sale under said employment, desires to show that its President had no authority to employ him for that purpose it was defensive matter within its peculiar knowledge that it must prove if it desires advantage therefrom.

Again in the case of Beekman v. Sonntag Investment Co., 67 Fla. 293, 64 South. Rep. 948, this court held that the acts of an agent, performed within the scope of his real or apparent authority are binding upon his principal.

The president of a corporation is usually the chief administrative officer of the corporate body, and is generally so regarded by the public. The details of the corporate business are usually carried on and attended to by him and his representatives, the usual or ordinary administrative and fiscal affairs of the corporation are transacted through him. The scope of his agency is wide in all matters arising in the ordinary course of the corpo-

ration's business. In this position of trust and confidence the corporation places him and invites the public to transact business with it through him.

If the contract he makes in the name of the corporation is for the benefit of the corporation, and one which the corporation has power to authorize him to make, or to ratify after it has been made, or one arising in the ordinary course of business and within the scope of the authority he is accustomed to exercise, and apparently does exercise, or has exercised, with the consent of the corporation, we think the corporation is bound by it, in the absence of any showing that it was neither authorized nor ratified. See Little Sawmill Val. Turnpike or Plank Road Co. v. Federal St. & P. V. Pass. Co., 194, Pa. St. 144, 45 Atl. Rep. 66; White v. Elgin Creamery Co., 108 Iowa 522, 79 N. W. Rep. 283; Patterson v. Robinson, 116 N. Y. 193, 22 N. E. Rep. 372; Chicago Pneumatic Tool Co. v. Munsell, 107 Ill. App. 344; National State Bank of Terre Haute v. Vigo County Nat. Bank, 141 Ind. 352, 40 N. E. Rep. 799; Glover v. Lee, 140 Ill. 102, 29 N. E. Rep. 680; George E. Lloyd & Co. v. Matthews, 223 Ill. 477, 79 N. E. Rep. 172.

The verdict of the jury for the plaintiff was required by the pleadings and the evidence, therefore the order of the court granting a new trial was error. The order is reversed, with instructions to enter judgement for the plaintiff on the verdict, unless a motion in arrest of judgment, or for judgment *non obstante veredicto* shall be made and prevail. Section 1695, Gen. Stats. of 1906; Bishop v. Taylor, 41 Fla. 77, 25 South. Rep. 287; Philadelphia Underwriters Ins. Co. of North America v. Bigelow, 48 Fla. 105, 37 South. Rep. 210; Winn v. Coggins, 53 Fla. 327, 42 South. Rep. 897; Feinberg v. Stearns, 56 Fla.

279, 47 South. Rep. 797; Georgia Southern & F. R. Co. v. Hamilton, 63 Fla. 150, 58 South. Rep. 838; Nathan v. Thomas, 63 Fla. 235, 58 South. Rep. 247.

TAYLOR, C. J. AND SHACKLEFORD, COCKRELL AND WHITFIELD, JJ., concur..