MIAMI JOCKEY CLUB v. LILLIAS PIPER, INC.

155 So. 806.

Opinion Filed June 25, 1934.

*Shutts & Bowen, Joseph F. McPherson* and *Louis S: Bonsteel,* for Plaintiff in Error;

*E. Harris Drew, Richard P. Robbins* and *J. Luther Drew,* for Defendant in Error.

Buford, J.—The writ of error is to a judgment in favor of plaintiff in the court below in an action for breach of contract to pay for services to be performed by plaintiff.

Our disposition of the case must turn principally upon the question as to whether or not the evidence was sufficient to support the verdict and judgment. We think it was and, therefore, must decline to disturb the judgment on the ground of insufficiency of the evidence.

The contract in this matter consisted of a letter setting forth the conditions under which plaintiff proposed to perform the services contemplated and the acceptance thereof in the following language:

"Lillias Piper

*"Interior Furnishings*

"Mail Address:

Station A       214 Chilean Ave.

Palm Beach, Fla.     Phone 9581

April 15, 1931

"Major Barclay H. Warburton, President,

"Miami Jockey Club, Miami, Florida.

"Dear Major Warburton:

"Confirming our conversation of yesterday, I shall be very pleased to take charge, in co-operation with Mrs. Warburton, of everything pertaining to the decoration and furnishings for the Miami Jockey Club on a cost-plus basis; my fee to be ten per cent. (10%) above the net cost; the Miami Jockey Club to finance all purchases and thereby receive the benefits of any and all cash discounts. Any

estimates requested in connection with this work will be gladly submitted by me.

"It is understood, of course, that this work is contingent upon favorable legislation relative to racing in Florida.

"As a matter of record for my files, will you be kind enough to sign one copy of this letter below the word, 'accepted,' and return it to me.

"Sincerely yours,

"Lillias Piper."

"ACCEPTED:

*"Barclay H. Warburton,*

"President, Miami Jockey Club."

That letters or telegrams may constitute a valid and binding written contract when they evidence a complete meeting of the minds of the parties and an agreement upon the terms and conditions of the contract, has long been settled as the law in this jurisdiction.

It is here insisted that the above quoted letter and the acceptance of the terms set forth therein did not constitute a contract binding Miami Jockey Club because of lack of authority in the president of that corporation to bind the corporation in this regard.

The record shows that the president of the corporation made contracts with various parties just as he did with this plaintiff and that such contracts so made by him on behalf of the corporation were performed by the corporation and that by this method of doing business the corporation held the president out as having authority to act in its behalf in such matters.

The record further shows that the corporation made a part payment to plaintiff on her claim under this contract at which time there was no disclaimer or repudiation of the contract.

In Cyclopedia of Law of Private Corporations, by Fletcher, Vol. 3, Sec. 2012, the author says:

"In view of the fact that presidents of corporations are often given general supervision and control over their management, it has been held by some courts that contracts, or acts made or done by the president of a corporation, in the course of its ordinary business will be presumed to have been within his authority, unless the contrary appears, or else it is expressly stated that the president has such powers. The rule so often stated that the president has very little or no authority merely by virtue of his office, that he has no powers other than those delegated him by the board of directors or otherwise expressly conferred upon him, that he has no more authority than any other director, etc., as already set forth above, is gradually being supplanted by the more reasonable view that he has certain more or less limited power, merely by virtue of his office, or at least that there is a presumption that such authority exists, in case of the ordinary routine business of the corporation. The courts, which have at least to some extent, broken away from the rule making the president a mere dummy, will be found to state their conclusions to the contrary in somewhat different language, and the rule enunciated by some of them is broader than the rule laid down by other courts. In some jurisdictions the rule is stated as a presumption of authority, while in other jurisdictions it seems that certain powers inhere in the office without regard to the actual or apparent authority conferred, where not otherwise limited. It is, therefore, deemed advisable to take up, one by one, and state the views of the courts in those jurisdictions rejecting the old rule wholly or in part. In stating this so-called modern doctrine it is often times difficult to ascertain just what rule the courts in particular

decisions intend to lay down, because of the hairline dividing his powers as a general manager and his powers merely as president. If he is expressly declared by the by-laws or by a resolution of the directors to be a general manager, then of course his powers are to be measured by those of a general manager rather than by those of a president. So, if the directors are mere dummies and leave the management entirely to the president, then he is in effect a general manager and his powers are those of a general manager rather than those of· a president. So, if he has been permitted in the past to exercise certain powers, then his authority is to be determined by the rules relating to apparent powers."

Again, in Section 2016 of the same volume, it is said: "Florida Rule.—In Florida, it is held that the president may be 'presumed' to have authority to employ agents to negotiate the sale of property owned by the company. Furthermore, the tendency of the decisions of this State is decidedly in favor of the rule that a presumption of authority exists in the case of acts of the president in the ordinary course of business."

In Cotton States Belting & Supply Co. v. Florida Railway Company, 69 Fla. 52, 67 Sou. 568, we said:

"The president of a corporation is usually the chief administrative officer of the corporate body, and is generally so regarded by the public. The details of the corporate business are usually carried on and attended to by him and his representatives, the usual or ordinary administrative and fiscal affairs of the corporation are transacted through him. The scope of his agency is wide in all matters arising in the ordinary course of the corporation's business. In this position of trust and confidence the corporation places

him and invites the public to transact business with it through him.

If the contract he makes in the name of the corporation is for the benefit of the corporation, and one which the corporation has power to authorize him to make, or to ratify after it has been made, or one arising in the ordinary course of business and within the scope of the authority he is accustomed to exercise, and apparently does exercise, or has exercised, with the consent of the corporation, we think the corporation is bound by it, in the absence of any showing that it was neither authorized nor ratified. See Little Sawmill Val. Turnpike or Plank Road Co. v. Federal St. & P. Pass. Co., 194 Pa. St. 144, 45 Atl. Rep. 66; White v. Elgin Creamery Co., 108 Iowa 522, 79 N. W. Rep. 283; Patterson v. Robinson, 116 N. Y. 193, 22 N. E. Rep. 372; Chicago Pneumatic Tool Co. v. Munsell, 107 Ill. App. 344; National State Bank of Terra Haute v. Vigo County Nat. Bank, 141 Ind. 352, 40 N. E. Rep. 799; Glover v. Lee, 140 Ill. 102, 29 N. E. Rep. 680; George E. Lloyd & Co. v. Matthews, 223 Ill. 477, 79 N. E. Rep. 172."

See also McGehee Lbr. Co. v. Tomlinson, 66 Fla. 536, 63 Sou. 919.

We hold that under the facts as shown by the record the corporation was bound by the contract.

We find no reversible error disclosed by the record.

The judgment should be affirmed. It is so ordered.

Affirmed.

Davis, C. J., and Whitfield and Terrell, J. J., concur.