765 So.2d 296 (2000)
LENSA CORPORATION, Appellant,
v.
POINCIANA GARDENS ASSOCIATION, INC., Appellee.
No. 4D99-2099.
District Court of Appeal of Florida, Fourth District.
August 23, 2000.
Tim B. Wright and Anthony L. Conticello of Warner, Fox, Wackeen, Dungey, Seeley, *297 Sweet & Wright, L.L.P., Stuart, for appellant.
Steven H. Wisoker, Hobe Sound, for appellee.
STONE, J.
We affirm a final judgment entered upon an order granting Poinciana Gardens Association, Inc.'s (Association) motion for directed verdict and motion for judgment notwithstanding the verdict following a jury verdict in favor of Lensa Corporation (Lensa). In entering its order in favor of Association, the trial court recognized that its president did not have actual or apparent authority to bind the non-profit homeowner's association to a sale of all or substantially all of its assets. We agree and affirm the decision of the trial court.
Association's president, Dr. Goodman, negotiated and agreed to the sale of all or substantially all of its assets, consisting of land, to BBG Appraiser Co. (BBG), a company owned by Mrs. Sandel, upon an understanding that it would assign its contract rights to Lensa, which would develop the property. The parties executed a written contract with Dr. Goodman signing on behalf of Association. Following the execution of the written agreement, counsel for Lensa discovered that Mr. Sandel (the owner of Lensa) had witnessed Dr. Goodman's signature. In order to avoid any problems with the contract, Mr. Sandel arranged to have a second contract executed. Before a second contract was executed, however, Mr. Sandel had a discussion with Ms. Stolle, Association's secretary. According to Mr. Sandel, Ms. Stolle told him that she was not aware that a sales contract existed on the land. Upon hearing this information, Mr. Sandel contacted Dr. Goodman and voiced his concerns. Dr. Goodman assured Mr. Sandel that he would call a board meeting and straighten out "whatever doubts [the members of the board of directors] had on the situation."
A meeting was held, attended by Association's officers, one general member, and two Association directors. It is undisputed that the persons in attendance did not constitute a quorum of the full board, the makeup of which was a matter of some confusion. At the meeting, those in attendance agreed that Dr. Goodman was authorized to sign the legal documents necessary for the sale to Lensa for the sum of $50,000. Unsigned minutes of the meeting were subsequently faxed to Mr. Sandal. Several days later, the parties executed a second contract, the terms of which mirrored those of the first contract.
Subsequently, Mr. Sterling, Association's new president, informed Mr. Sandel that Association would not honor the contract because Dr. Goodman was not authorized to sign the contract and the selling price was too low. Lensa then filed a breach of contract action against Association.
At jury trial, Lensa conceded that Dr. Goodman did not have actual authority to sell the property and that the board of directors did not meet and approve the sale of the property. The jury entered a verdict totaling $18,000.00. In reaching this decision, the jury found that Dr. Goodman had apparent authority to sign the agreement. The trial court granted Association's motion for directed verdict and judgment notwithstanding the verdict, finding that Dr. Goodman had no actual authority because the true board of directors did not vote on the sale of property; there was also no apparent authority because Dr. Goodman failed to obtain the approval of the directors (as required under the association's bylaws, as well as section 617.1202, Florida Statutes), and at no time did either the board or the membership confer such authority upon him.
The sale of all or substantially all of a non-profit corporation's assets is strictly controlled by section 617.1202, which provides, in pertinent part:
A sale, lease, exchange, or other disposition of all or substantially all of the property and assets of a corporation ... *298 must be authorized in the following manner:
(1) If the corporation has members entitled to vote on the sale, lease, exchange, or other disposition of corporate property, the board of directors must adopt a resolution approving such sale, lease, exchange, or other disposition, and directing that it be submitted to a vote at a meeting of members entitled to vote thereon, which may be either an annual or special meeting....
(2) If the corporation has no members or if its members are not entitled to vote thereon, a sale, lease, exchange, or other disposition of all or substantially all the property and assets of a corporation may be authorized by a majority vote of the directors then in office.
§ 617.1202, Fla. Stat. (1995).
Association's bylaws do not require membership approval; therefore, the directors had the authority to sell the property and assets of the corporation. See § 617.1202(2), Fla. Stat. Here, a majority vote of the directors was necessary in order to authorize the sale. There is nothing in the record to indicate that Association complied with section 617.1202 or the bylaws before executing the agreement. At no time was there a majority vote by the directors. Thus, it is clear that Dr. Goodman did not have actual authority to sell the land. Any liability of Association, therefore, must be based upon Dr. Goodman's apparent authority.
Three elements are needed to establish an apparent agency: (1) a representation by the purported principal; (2) reliance on that representation by a third party; and (3) a change in position by the third party in reliance upon such representation. See Ideal Foods, Inc. v. Action Leasing Corp., 413 So.2d 416, 418 (Fla. 5th DCA 1982). The reliance of a third party on the apparent authority of a principal's agent must be reasonable and rest in the actions of or appearances created by the principal, see Rushing v. Garrett, 375 So.2d 903, 906 (Fla. 1st DCA 1979), and "not by agents who often ingeniously create an appearance of authority by their own acts." Taco Bell of California v. Zappone, 324 So.2d 121, 124 (Fla. 2d DCA 1975). As to acts in the ordinary course of business, courts have consistently recognized that a presumption of authority exists in the case of acts made or done by presidents. See Pan-American Constr. Co. v. Searcy, 84 So.2d 540 (Fla.1955); Miami Jockey Club v. Lillias Piper, Inc., 115 Fla. 612, 155 So. 806 (1934).
This sale was not made in the course of the corporation's ordinary business and there is no basis for concluding that the sale of all or substantially all of Association's assets could be presumed to be within Dr. Goodman's authority. For an agent to act with apparent authority requires, as previously noted, that the principal create the appearance of the agent's apparent authority. Here, reliance on the signature of the president and on the minutes were insufficient to create apparent authority. The statute mandates that only the board has the power to authorize a sale. Here, the board did not make any representations or take any actions signifying either its consent or the president's authority to act.
Therefore, although the second and third elements of apparent authority may be supported by the record, there is no record support for the first. Further, to hold otherwise would defeat the very charge of the statute that the sale of all or substantially all of a non-profit corporation's assets must be authorized by the board or membership. Therefore, the judgment is affirmed.
POLEN, J., concurs.
GROSS, J., concurs specially with opinion.
GROSS, J., concurring specially.
I concur in the majority's conclusion that appellant failed to demonstrate the apparent authority of the agent to support the creation of a binding real estate contract. The contract did not require that *299 the appellee non-profit corporation approve the sale by the adoption of a corporate resolution, a corporate act which appears to be mandatory in this case under section 617.1202, Florida Statutes (1995).
The operation of the statute limits the application of apparent authority in this case. The president of the corporation did not have the inherent authority to enter into this contract. Cf. Pan-American Constr. Co. v. Searcy, 84 So.2d 540, 543-44 (Fla.1955) (noting that, while a vice president does not have the inherent authority to bind a corporation, a president may bind the corporation in a proper case under the doctrine of inherent powers); Ideal Foods, Inc. v. Action Leasing Corp., 413 So.2d 416, 417 (Fla. 5th DCA 1982) (holding that a secretary-treasurer had neither inherent authority nor apparent authority to bind the corporation in dealings with third parties). There was no history of completed deals between the parties that would give rise to the apparent authority of Goodman to bind the corporation. Cf. Stiles v. Gordon Land Co., 44 So.2d 417, 421-22 (Fla.1950) (holding that party who negotiated sale of building had apparent authority to do so). There was no formal act by the board of directors "which would denote the holding out of [Goodman] as possessing the authority to act on its behalf." H.S.A., Inc. v. Harris-in-Hollywood, Inc., 285 So.2d 690, 693 (Fla. 4th DCA 1973).