993 So.2d 86 (2008)
CAMBRIDGE CREDIT COUNSELING CORPORATION, Appellant,
v.
7100 FAIRWAY, LLC, Appellee.
No. 4D07-4774.
District Court of Appeal of Florida, Fourth District.
October 1, 2008.
Rehearing Denied November 19, 2008.
*87 Andrew A. Pineiro of Pineiro, Wortman & Byrd, P.A., Jupiter, for appellant.
*88 Robert L. Jennings of Jennings & Valancy, P.A., Fort Lauderdale, for appellee.
WARNER, J.
Appellant, Cambridge Credit Counseling Corporation, appeals a final judgment entered in favor of appellee, 7100 Fairway, LLC, against Cambridge and Brighton Credit Corporation for breach of a lease agreement by lessee Brighton, finding defendants jointly and severally liable for damages. Cambridge executed a guaranty of Brighton's obligations but contended that because it was a Massachusetts "public charity," its guaranty was ultra vires under Massachusetts law. We affirm the trial court's final judgment, holding that under Florida law, which governed the contract, appellant could not challenge the guaranty as ultra vires.
Cambridge is a Massachusetts corporation which is exempt from taxation as a section 501(c)(3) charitable corporation under the Internal Revenue Code. 26 U.S.C. § 501(c)(3). It provides credit counseling services. During the times relevant to this case, John Puccio was president of Cambridge. At the same time, Puccio was president and a 50% shareholder of Brighton, a commercial enterprise which provided equipment, personnel, and software to Cambridge. His brother owned the other 50% and was the director of strategic planning for Cambridge.
This case involves a lease agreement of commercial property in Palm Beach Gardens, Florida. Fairway leased its property to American Huts which assigned its lease to Brighton. Puccio, as president of Cambridge and on its behalf, signed both the assignment and a guaranty of Brighton's lease obligations. The guaranty agreement recited that Cambridge was the parent and owner of all of the shares of Brighton. Five years into the lease, Brighton defaulted on its obligations. Fairway filed suit against Brighton for breach of the lease agreement and sued Cambridge on its guaranty. Fairway obtained a default judgment against Brighton. Cambridge answered, alleging as an affirmative defense that the execution of the guaranty was an ultra vires act under Massachusetts law, which prohibits a public charity from executing a guaranty of another's obligations. Mass. Gen. Laws ch. 156B, § 9B & ch. 180, § 6. It further alleged that Puccio did not have the actual or apparent authority to execute the guaranty.
Fairway moved for summary judgment on Cambridge's defenses, while Cambridge also moved for summary judgment on its defense of ultra vires. The trial court granted summary judgment determining that Cambridge could not challenge the guaranty as ultra vires as a matter of law or escape liability by disclaiming Puccio's authority to execute the guaranty when it had induced Fairway to enter into the lease assignment to Brighton. After the trial court's ruling, the parties stipulated to the damages, and the trial court entered final judgment, from which Cambridge appeals.
Because the trial court entered a summary judgment on the issues of Cambridge's liability under the guaranty, our standard of review is de novo. Mobley v. Gilbert E. Hirschberg, P.A., 915 So.2d 217, 218 (Fla. 4th DCA 2005). The entry of a summary judgment is appropriate "only when there are no genuine issues of material fact conclusively shown from the record and the movant is entitled to judgment as a matter of law. All doubts and inferences must be resolved against the moving party, and if there is the slightest doubt or conflict in the evidence, then summary judgment is not available." Id. (quoting Shreffler v. Philippon, 873 So.2d 1280, 1281 (Fla. 4th DCA 2004)).
*89 Cambridge asserts that it is a public charity under Massachusetts law. Because of that status, Massachusetts law prohibits it from entering into a contract of guaranty. We are not certain of its status as a public charity within the meaning of Massachusetts law.[1] However, even assuming that status, we conclude that this case is controlled by Florida law because the contracts were to be performed in Florida, and both the lease and assignment contained a Florida choice of law clause.
Section 617.0304(1), Florida Statutes (2007), provides:
[T]he validity of corporate action, including, but not limited to, any conveyance, transfer, or encumbrance of real or personal property to or by a corporation, may not be challenged on the ground that the corporation lacks or lacked power to act.
Section 617.0304(2) prevents a challenge to a business corporation's act as ultra vires unless brought by a shareholder, through a derivative action, or by the attorney general. In other words, a corporation cannot defend against a transaction it willingly entered into with a third party by claiming its act was without lawful authority. See Brown v. Marion Mortgage Co., 107 Fla. 727, 145 So. 413, 417 (1932) (defendants in suit to foreclose mortgage who received benefit of mortgage are estopped to rely on ultra vires character of transaction to defeat enforcement of it); Bd. of Pub. Instruction of Manatee County v. Cassidy, 122 Fla. 536, 155 So. 834, 834 (1934) (board could not disavow transaction as ultra vires where it obtained title to property but refused payment; "[t]he obligation to do justice rests on all persons, and they should not be permitted to invoke the doctrine of ultra vires when it would defeat the ends of justice or work a legal wrong"). In accordance with section 617.0304, Cambridge cannot assert its lack *90 of authority to enter into the transaction. The present suit for breach of contract does not fall within any of the authorized proceedings where the lawful nature of the transaction may be challenged. The trial court was correct in granting summary judgment on the defense of ultra vires.
We distinguish Chatlos Foundation, Inc. v. D'Arata, 882 So.2d 1021 (Fla. 5th DCA 2004), on which Cambridge primarily bases its argument that Massachusetts law should apply to prevent enforcement of the guaranty. In Chatlos, a director of a New York not-for-profit foundation sought indemnification for her fees and expenses in connection with a derivative suit against the foundation. She sought fees under a Florida corporation statute, because the New York statute did not provide indemnification of her fees. The trial court granted indemnification, but the appellate court reversed. It pointed to section 617.1505(3), Florida Statutes, which provides: "This act does not authorize this state to regulate the organization or internal affairs of a foreign corporation authorized to conduct its affairs in this state." Id. at 1027 (emphasis added). The appellate court concluded that indemnification of fees and costs expended by a director was a matter of the internal affairs of the corporation and was governed by the state of incorporation.
In contrast, the execution of a guaranty to a Florida landlord is not a matter of the internal affairs of the corporation. It involves the relationship between the corporation and a third party. Thus, it is not governed by the law of the state of incorporation.
Cambridge also claims that Puccio lacked authority from the corporation to enter into the guaranty. However, the trial court appears to have determined that as a matter of law Puccio had apparent authority to enter into the agreement. "Three elements are needed to establish an apparent agency: (1) a representation by the purported principal; (2) reliance on that representation by a third party; and (3) a change in position by the third party in reliance upon such representation." Lensa Corp. v. Poinciana Gardens Ass'n, 765 So.2d 296, 298 (Fla. 4th DCA 2000). A third party's reliance "must be reasonable and rest in the actions of or appearances created by the principal...." Id. "As to acts in the ordinary course of business, courts have consistently recognized that a presumption of authority exists in the case of acts made or done by presidents." Id. The execution of a guaranty of a lease is an act which would be classified in the ordinary course of business, unlike the transaction in Lensa which involved the sale of all of the corporation's assets.
Given the presumption of authority on behalf of the president to execute the contract, the evidence established the first element of apparent agency. It is clear that Fairway relied on the representation, because the guaranty recited that Fairway would not consent to the assignment of the lease without the guaranty from Cambridge. And, of course, Fairway changed its position, because it released its original tenant in favor of Brighton. Thus, all elements were proved, and there was no material issue of fact remaining.
However, even if some issue remained as to apparent agency, the summary judgment could still be upheld, because the evidence is undisputed that Cambridge is estopped from challenging its guaranty five years after executing it. With knowledge that Fairway relied on the guaranty, Cambridge failed to object or disclaim it until this suit was filed five years later. "A principal may not accept the benefits of a transaction negotiated by the agent and disavow the obligations of *91 that same transaction." Mercury Ins. Co. of Fla. v. Sherwin, 982 So.2d 1266, 1270 (Fla. 4th DCA 2008). Based upon that principle alone, the court did not err in granting summary judgment.
Affirmed.
MAY, J., and BIDWILL, MARTIN J., Associate Judge, concur.
NOTES
[1] Although Cambridge was incorporated with reference to Massachusetts General Law chapter 180, that chapter recognizes a distinction between corporations and "public charities." See Mass. Gen. Laws ch. 180, § 2. In addition, Massachusetts case law recognizes a distinction between those institutions which might be deemed charitable and those which are public charities within the meaning of the act. See, e.g., Attorney Gen. v. Weymouth Agric. & Indus. Soc'y, 400 Mass. 475, 509 N.E.2d 1193, 1195 (1987) ("A c. 180 corporation could be formed for stated purposes that are charitable and yet it might not be a public charity, perhaps, for example, because it was never intended that its activities should benefit a sufficiently large and indefinite class of persons or because its earnings could inure to the benefit of noncharitable objects."). See also Conners v. Ne. Hosp. Corp., 439 Mass. 469, 789 N.E.2d 129, 133-36 (2003). Only public charities, as opposed to other charitable institutions, are prohibited from entering into contracts of guaranty.

Cambridge produced a "Certificate of Solicitation" from the Massachusetts Attorney General's office. This document states that Cambridge was current in all of its reports. It states, however, "This registration in no manner constitutes endorsement or approval by the Commonwealth of Massachusetts or the named organization [Cambridge]." We do not interpret this as any type of official statement that Cambridge is in fact a public charity. We can find no provision of Massachusetts law which authorizes the Attorney General to designate organizations as public charities. In fact, it appears to be an issue of statutory and case law to determine what is a public charity. See Weymouth; see also 940 Mass.Code Regs. 2.01 (defining public charity as "any organization that is charitable as determined by Massachusetts law including statutory and case law irrespective of its categorization under federal definitions"). We also note that, according to its financial statements, the company takes in millions of dollars from its credit clients and apparently receives no donations. In fact, it is hard to think of this organization as a charity at all, let alone a public one. Thus, were this case to turn on the issue of summary judgment with respect to Cambridge's status as a public charity, we would find that material issues of fact remain.