E. O. PAINTER FERTILIZER COMPANY, *Plaintiff in Error*, v. JOHN E. BOYD AND P. COLSON PERRY, *Defendants in Error*.

Opinion Filed March 1, 1927.

1. In an action of assumpsit upon the common counts, against a corporation by physicians and surgeons, to recover for professional services rendered and for work done and materials furnished by plaintiffs for defendants at its reqest, in performing an autopsy upon the body of the president of such corporation, over which defendant had no ownership, control or possession, the right of action must be based upon a valid obligation to pay therefor.

2. In such action against a corporation, a promise to pay for such services can not be inferred from the fact that plaintiffs were called in their professional capacity by officers of such corporation to render medical or surgical treatment to the person who was the president of such corporation and whose body has been recovered from a river after death.

3. Wherever a corporation is acting within the scope of its legitimate purpose, parol contracts by authorized agents are express promises of the corporation and all benefits conferred upon the corporation at the request of such agents raise implied promises binding upon the corporation.

4. The burden rests upon one who seeks to hold a corporation liable for an act or on a contract of an officer or agent to show that the doing of the act or the execution of the contract was duly authorized or that it was properly ratified by the corporation.

5. A manufacturing corporation is not liable to physicians or surgeons for their services in performing an autopsy upon the remains of an officer of such corporation at the request of its secretary and cashier or head bookkeeper in the absence of proof that their duties as such officers conferred upon them authority to request such services at the expense of the corporation or that such requests were duly ratified by the corporation.

6. An express contract of employment made by the president of a corporation with physicians and surgeons, to obtain information concerning the results of a chemical and microscopical examination of parts of the body of an officer of such corporation, made by others to determine the presence or absence of poison therein, and bearing upon the cause of death whether by suicide or accidental drowning, when it was disclosed after an autopsy was held that such deceased person had insured his life for the benefit of the corporation, was within the apparent scope of the powers of such corporation, was binding upon the corporation and such employees can recover from such corporation for such services on a count for work done and materials furnished.

7. Physicians and surgeons employed by duly authorized agents of a corporation to obtain information from others and to report the same for an agreed consideration, in an action of assumpsit on the common counts can not recover additional compensation for conferences and consultations with officers of such corporations held for the purpose of obtaining from such physicians and surgeons such information.

8. Evidence examined and found not to sustain verdict for fees for services rendered by plaintiffs in performing an autopsy or for conferences and consultations. A new trial will be awarded unless plaintiffs enter a remittitur covering the items not recoverable.

A Writ of Error to the Circuit Court for Duval County; Daniel A. Simmons, Judge.

Affirmed with Remittitur.

*Williams & Bly* and *J. Turner Butler,* for Plaintiff in Error;

*Geo. M. Powell,* for Defendants in Error.

LOVE, *Circuit Judge.*—In July, 1914, defendants in error brought suit against plaintiffs in error for damages in the sum of Ten Thousand Dollars, their declaration, which was filed in September of that year, containing two counts, the first of which was upon an alleged promise to pay plaintiffs on request the sum of Fifty-six Hundred Dollars for medical attendance, advice and medicine given and provided by plaintiffs to and for defendant at its request. The second count was upon an alleged express promise made on July 1, 1913, to pay plaintiffs on request a reasonable sum for certain work and services done and bestowed upon them at the defendant's request in and about the business of defendant and for it, the sum of Ten Thousand Dollars being alleged as a reasonable compensation for such work and services. A bill of particulars, attached to the declaration, consisted of the following items:

First Count.

1913.

May 22.—Attending and performing autopsy upon the remains of E. O. Painter..........$1,000.00

May 22.—Office advice, conference and consulta-
tions from May 22, 1913, to June 16, 1913, and
from June 25, 1913, to July 1, 1913 . . . . . . . . . .$1,000.00.

June 25.—Services as per agreement during ab-
sence on second trip to Baltimore and trip to
New York, from June 16 to June 25, 1913,
(nine days at Four Hundred ($400.00) Dol-
lars per day . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,600.00

Total . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$5,600.00

Second Count.

To services and advice from the 22nd day of May,
1913, to June 25, 1913 . . . . . . . . . . . . . . . . . . . . .$10,000.00

Nothing further appears to have been done in this suit
until about three and a half years later, when plaintiffs,
obtaining leave of the Court therefor filed an amended dec-
laration on February 4, 1918. This declaration was one of
assumpsit, containing three counts based upon an alleged
indebtedness from the defendant to the plaintiffs in the sum
of Fifty-six Hundred Dollars for money payable by defend-
ant to the plaintiffs, first: for services as physicians and
surgeons done and rendered by plaintiffs for defendant at
its request; second: for work done and materials provided
by plaintiffs for defendant at its request; and third: for
money found to be due from defendant to plaintiffs on
account stated between them.

The bill of particulars attached to this amended declara-
tion was identical with that attached to the original, with
the exception that the last item of the first was omitted.
After various vicissitudes, the case went to trial on issue
joined on pleas of never was indebted and payment, result-
ing in a verdict and judgment for the plaintiffs, which
judgment defendants seek to reverse upon writ of error.

Eighty-five errors are assigned, forty-seven of which are argued, presenting a condition, unusual even in this Court, which in several cases has been compelled to call attention to the practice of assigning a large number of errors and criticising it mildly but adversely. See Hoopes v. Crane, 56 Fla. 395, 47 South. Rep. 992; Atlantic Coast Line R. Co. v. Whitney, 65 Fla. 72, 61 South. Rep. 179; Mitchell v. Mason, 65 Fla. 208, 61 South. Rep. 579; Florida East Coast R. Co. v. Knowles, 68 Fla. 400, 67 South. Rep. 122; Padgett·v. State, 64 Fla. 389, 59 South. Rep. 946; Atlantic Coast Line R. Co. v. Levy, 68 Fla. 234, 67 South. Rep. 47.

Zeal of counsel in behalf of their clients, is doubtless responsible for this practice; but, however commendable such zeal within reasonable limits may be and indeed is, it often defeats the very purpose sought to be attained. We again are constrained to criticise such practice, and to sound another warning against it, endorsing the following expressions on this subject: ''The practice of unlimited assignments is a perversion of the rule, defeating *all* its purposes, bewildering the counsel on the other side, and leaving the Court to gather from a brief, often as prolix as the assignments of error, which of the latter are really relied on.'' Philips & Co. Construction Co. v. Seymour, 91 U. S. 646, 23 L. Ed. 341.

This action is based upon an express promise by the defendant to pay the plaintiffs a certain sum for services as physicians and surgeons, for work done and material provided and account stated.

In the light of the evidence in this case, the right of action, if any exists, rests upon the legal obligations of the defendant, a corporation, to pay for the services rendered by plaintiffs in performing an autopsy upon the dead body of Mr. Painter, who in his lifetime was the president of the defendant corporation, for office advice, and for conference

and consultations with various persons from May 22nd to July 1, 1913, and for services rendered in making a trip to Baltimore and New York.

An autopsy is a *post mortem* examination, a dissection of a dead body to determine the cause, seat or nature of the disease; in the case at bar, to determine whether there existed in the stomach or other organs of the deceased any trace of poison. From the evidence presented by the plaintiffs it appears that the autopsy was performed with the knowledge and at the request of D. A. Morrison, Jr., who was then the secretary and cashier of defendant corporation, and W. I. Lyman, its head bookkeeper, who were the business acquaintances of the deceased, associated with him in the business of defendant corporation and were friends of his family.

It is perfectly obvious that whatever may have been the nature of the services rendered by the plaintiffs in and about the autopsy, such services were neither medicinal nor surgical, because both sciences or arts have for their purposes and objects the healing, curing or alleviation of diseases, deformities or injuries; but the labor performed upon the dead body of Mr. Painter was not for the purpose of healing or restoring him to life, or health, but to ascertain the cause of his death and secure evidence, as it is claimed, that would be of benefit to the defendant. Yet, as the declaration was, in part for physicians' and surgeons' fees and for labor performed, which the evidence shows was upon a dead body, over which the defendant corporation had no ownership, control or pessession, nor right thereto, the right of action against the defendant must rest upon an express or implied obligation on the part of the defendant to pay therefor. The record discloses no evidence of any express promise on the part of the corporation to pay for such services and the promise to pay therefor cannot be inferred

from the fact that the plaintiffs, who were physicians and surgeons, were called in their professional capacity to render medicinal or surgical assistance or treatment to the person whose body had been recovered from the river into which it had fallen.

At the time the alleged autopsy was performed, none of the parties performing the same or who it is claimed authorized it, knew or were informed of any interest that defendant corporation had in its results and it was some time afterwards that such parties learned of the existence of insurance policies on the life of Mr. Painter, in favor of the defendant corporation. As far as they were informed at the time of the autopsy there was no benefit to accrue to defendant or loss to be sustained by it, through any developments from such autopsy. It appears from the evidence that such autopsy was first suggested by Dr. Perry, one of the plaintiffs, for the purpose of protecting the interest of the estate of the deceased, with respect to a large amount of insurance at that time reported to have been carried by Mr. Painter. No motive is shown for Mr. Lyman or Mr. Morrison to attempt to bind the defendant corporation for the performance of such autopsy and no action on their part as agents of the corporation imposing on it any liability therefor is shown, even if they had the power to bind the defendant in this respect. It further clearly appears that such autopsy was performed upon the authorization of the widow and only child, a daughter, of the deceased. It would seem to be a sound principal of law, that wherever a corporation is acting within the scope of its legitimate purposes of its institution all parol contracts made by its authorized agents are express promises of the corporation and all benefits conferred (upon the corporation) at their (the authorized agents) request raise implied promises for the enforcement of which an action may well lie. Bank of Columbia v. Patterson's Admrs., 7 Cr.

306. From this statement of the law by Judge Story which expresses the American doctrine on the subject, we can deduce the two tests by which it may be determined whether an act or contract is valid and binding upon a corporation: (1) Is the act or contract within the legitimate purposes of its chartered powers: (2) Is the act done or contract entered into by an agent of the company thereunto authorized, or has such act or contract been ratified by the corporation?

Assuming, for the purposes of this case, but expressly refraining from determining the proposition, that it was within the chartered powers of the corporation to employ plaintiffs to perform the autopsy in question, yet the evidence entirely fails to show that either Mr. Morrison, the secretary and treasurer of defendant corporation, or Mr. Lyman, its head bookkeeper, was properly authorized to so employ plaintiffs, it being the general rule, that the burden rests upon one who seeks to hold a corporation liable for an act on a contract of an officer or agent to show that the doing of the act or the execution of the contract was properly authorized, or that it was properly ratified by the corporation. 14 A. C. J. 399.

The record wholly fails to show any such employment by any duly authorized officer or agent of the corporation, unless the duties of such secretary and cashier or of such head bookkeeper gave them authority to request such services for and at the expense of the corporation. In view of the testimony, it does not appear that the duties of a secretary and cashier or of a head bookkeeper of a manufacturing corporation such as is the defendant, are such that the law implies therefrom authority to employ physicians and surgeons to perform autopsies upon the dead body of an officer of the corporation, and therefore a request from them to perform such service is not in law the request of the corporation, and no ratification of their

acts by the corporation being disclosed liability therefor
is not shown.   Atlantic Refining Co. v. Lefingwell, — Fla.
—, 54 So. 226.

As to the second trip to Baltimore as to which there is
testimony that it was found to be necessary at a conference
between plaintiffs and certain parties representing the E.
O. Painter Fertilizer Company, that Company, by its
President, Miss Okle Painter, who had been elected Presi-
dent of the Company in the meantime, agreed to pay the
two doctors each two hundred dollars a day and expenses,
and, said Dr. Boyd in his testimony "they agreed to pay
Dr. Perry and myself four hundred dollars a day and
our expenses to make this second trip," and that he, Dr.
Boyd, was absent nine days on that trip.   Dr. Perry test-
fied also that he was absent about nine days on that second
trip.

The President of the defendant Company was authorized
in behalf of the Corporation to make such an agreement
under the circumstances of the case, which were as follows:
Mr. Painter, the President of the Company, had his life
insured for a large sum of money upon policies of life in-
surance payable in the event of his death to the Company.
It was deemed important by the President and other of-
ficers of the Corporation after the autopsy was performed
to employ competent persons to proceed to Baltimore, to
which city the organs which had been removed from the
body of Mr. Painter had been shipped for chemical and
microscopic examination to the end that it could be deter-
mined whether there was present any trace of lethal
poison present in them, and to be present at such examina-
tions and obtain possession of "what was left of the con-
tents of the stomach" of the deceased and do whatever
they "thought was necessary and best in order to meet
this matter of the presence of antimony" in reference to

the report which had come from the chemical examination of the parts sent on to that city.

It was in anticipation of the effect which the discovery of antimony in the vital organs of Mr. Painter might have upon the validity of the Company's claims on the insurance policies that furnished the interest which the Company had in the employment of the plaintiff's to make the trip to Baltimore. The contract was apparently within the scope of the President's power to make in behalf of the corporation.

It is beside the question to say that the activities of the plaintiffs themselves brought about the necessity or apparent necessity for their employment. It is equally inconclusive to argue that the plaintiffs' services were originally sought as physicians and surgeons by the family of the deceased who desired them to use their knowledge and skill to resusciate Mr. Painter and not as guardians of the family fortune nor as detectives to secure evidence with which to forestall any defense that might be interposed by the insurance companies in actions upon the life policies held by Mr. Painter. The fact remains that a situation arose after the plaintiffs performed the autopsy which the officers of the corporation deemed it advisable in the corporation's interests to explain or to be more fully advised upon in order to meet any possible defense which might be urged in behalf of the insurance companies which wrote the policies in which the defendant was interested.

Neither is the wisdom of the course pursued by the defendant corporation a proper subject of inquiry in this litigation. The officers with whom the business interests of the corporation were intrusted employed the plaintiffs, according to their evidence, to proceed to Baltimore and try and accomplish certain things in relation to the

chemical and pathological examination made by the chemists and pathologists of that city to whom parts of Mr. Painter's body had been sent for examination. A report had been made by the experts in which it was stated that antimony, a poison, had been found in the stomach of the deceased. Dr. Boyd testified that he and Dr. Perry were employed to go to Baltimore and do whatever they thought "was necessary and best in order to meet this matter of the presence of antimony in this report." It may have been a most indefinite, even questionable service, but they were employed to render it and it was considered by the Company's President and other officers to be in the Company's interest.

The services the plaintiffs were to perform were not medical nor surgical and the chemical analysis of the contents of the stomach of the deceased they were not competent to perform, according to Dr. Boyd's testimony. In fact the analysis had always been made in Baltimore. But they were employed to go to Baltimore and do what they could in the "matter of the presence of antimony in this report," for which they were to be paid four hundred dollars per day and expenses. They accepted the employment and went.

While the evidence as to the authority from defendant corporation for plaintiffs to proceed from Baltimore to New York, is not as clear or as full as might be desired, yet taking into consideration the objects and purposes for which plaintiffs had been employed to go to Baltimore, that these had not been attained, the extent and scope of their instructions before leaving Jacksonville, the telegram sent to Dr. Perry from Jacksonville on May 20th and signed "E. O. Painter Co.", which stated "If considered necessary have other examinations made," which went to the jury for their consideration, we cannot go to the ex-

tent of holding that this item is wholly unsupported by the testimony.

The corporation being liable on that promise, the plaintiffs can recover for this item upon the count for "work and labor done and materials provided."

As to the item in the bill of particulars for office advise, conferences and consultations from May 22, 1913, to July 1, 1913, the evidence discloses that such conferences and consultations, when had were for the purpose of obtaining information from the plaintiffs relative to the disclosures made by chemical and microscopical examination of certain parts or organs of the body of the deceased forwarded to Baltimore for such purpose. To obtain such information plaintiffs had made and been paid by the defendant corporation for one trip to Baltimore. No definite information having been obtained by the interested parties at Jacksonville, a second trip by plaintiffs to ascertain and report upon the desired facts, the discussions relative to the employment of plaintiffs to make such second trip being included in the conferences and consultations charged for. As to this item the plaintiffs failed to sustain the burden of proving any liability on the part of defendant corporation to pay therefor.

The evidence fails to support the count in the declaration for account stated.

We have carefully considered the record and all the material assignments of error, but are unable to discuss them and at the same time keep this opinion within reasonable limits.

The verdict we think was excessive in that it included the services for performing the autopsy and fees or compensation for conferences and consultations, and should have been set aside on the motion for a new trial.

If the plaintiffs below enter a remittitur of Two Thous-

and Dollars with interest thereon from July 1, 1913, the judgment will stand affirmed, failing to do this within thirty days after the mandate is filed the judgment will be reversed and a new trial granted.

PER CURIAM.—The record in this cause having been considered by this Court, and the foregoing opinion prepared under Chapter 7837, Acts of 1919, adopted by the Court as its opinion, it is considered, ordered and adjudged by the Court that if the plaintiffs below shall within thirty days after the filing of the mandate in the lower court enter a remittitur of Two Thousand Dollars with interest thereon from July 1, 1913, the judgment of the Circuit Court will stand affirmed; failing to do this within thirty days after the mandate is filed, the said judgment will be reversed and a new trial granted.

ELLIS, C. J., AND WHITFIELD, TERRELL, BROWN AND BUFORD, J. J., concur.

STRUM, J., not participating.