HOBSON, Justice.
On May 12, 1954, the claimant was injured by virtue of an accident arising out of and in the course of his employment. The question throughout this case has been who was the claimant’s employer. The Deputy Commissioner found and determined that the claimant was employed by Cone Bros. Contracting Co. The full commission without, so far as we can determine, reversing any of the Deputy’s findings of fact, found that the claimant at the time of his injury was employed by Pan-American Construction Company and reversed the award against Cone Bros. Contracting Co.
As a predicate for this compensation order, the Deputy Commissioner made the following findings:
. “Cone Bros. Contracting Co. is located in Tampa, Florida, is a large concern, employing over 300 persons, and engaged in the business of building roads and bridges throughout the State of Florida. Pan-American Construction Co. is located in Miami, Florida, is a much smaller concern, and appears to be engaged in somewhat the same type of work as Cone Bros, but on a much smaller scale. Cone Bros., on. March 29, 1954, had a contract with the State Road Department of Florida to construct certain roads in Osceola County. It was on this road construction project that the claimant was injured. The claimant testified that Mr. J. M. McNeill hired him, that at the time of the accident he was work-; ing for Cone Bros., and that he was paid by Cone Bros.
“There has been offered in evidence by Cone Bros, a letter signed in the name of Pan-American Construction Co. by one J. B. Hampton, proposing to furnish asphalt on the above road project. Mr. Cone has testified that he accepted in writing this proposal. There is no proof that J. B. Hampton had any -authority whatsoever from Pan-American Construction Co. to sign any such proposal, or that he was an officer of the company, or authorized by Pan-American Construction Co. to enter into any agreement. Mr. Cone testified that he 'thought Mr. Hampton represented Pan-American Construction Co. because he knew Mr. Hampton had been connected with the enterprises of Mr. John C. Dickerson, and Mr. Cone believed that Mr. John C. Dickerson had something to do with Pan-American Construction Co. However, there has been no proof offered that Mr. John C. Dickerson was an officer of Pan-American Construction Co., or had any authority to represent that company, the only evidence offered being directly to the contrary.
“No employee on the .job was ever paid by Pan-American Construction Co., all payroll accounts being sent to Cone Bros. Contracting Co. No equipment on the project was owned by Pan-American Construction Co., the trucks being owned by Cone Bros. Contracting Co. and John C. Dickerson Co., and the asphalt equipment being owned partly by Polk Construction Co. and by John C. Dickerson.
“J. B. Hampton testified that he was in the office of John C. Dickerson when Mr. Cone called him and asked if the asphalt was available; that the above referred to proposal was written out in longhand by Dickerson in his office, later typed, and signed by J. B. Hampton; that he took all his orders from John C. Dickerson and never worked under any officers of the Pan-American Construction Co.; that he does not know whether the above proposal letter was ever forwarded to Pan-American *542 Construction Co.; that pursuant to his conversation with Cone, and the above letter, the equipment was 'moved to Osceola County and work commenced. It was while working around this asphalt equipment that the claimant suffered the accident and injury.
“The testimony of Mr. Cone and the Cone Bros. Contracting Co. bookkeeper is, that no accounting has ever been made to Pan-American Construction Co., no correspondence has been carried on with their office, no payments have ever been made Pan-American Construction Co., and no benefits received by them, nor are any payments ■contemplated; nor, from the testimony of Mr. Cone, was there to be any attempt to make any collections from Pan-American Construction Co., because of loss on the purported contract. Mr. Cone testified that he decided to terminate the contract because the costs were running too high and on occasions he was unable to find Mr. McNeill, the superintendent, on the job. He talked ■over the termination of the contract with Mr. Hampton or Mr. Dickerson, he doesn’t remember which, and agreed' to pay Dickerson $1,000.
“Mr.” J. M. McNeill testified that he is a Vice-President of Pan-American ■Construction Co.; that sometime prior to April 19, 1954, Mr. Dickerson asked him if he would like to go to Osceola County and take a job; that very little work was being done by Pan-American Construction Co., that their finances were low and that he wanted to remove himself from the payroll of Pan-American and work for some other organization; that he asked Mr. Dickerson who would pay him in Osceola County; and Mr. Dickerson told him Cone Bros. Contracting Co. That he didn’t know anything about any contract between Pan-American Construction Co. and Cone Bros. Contracting Co. That he went to Kissimmee and became superintendent of the work there on April 19; when he needed any materials he called the Cone Bros. Contracting Company in Tampa; that he reported the claimant’s injury to Mr. Connor and Mr. Hampton of Cone Bros. Contracting Co. That he signed for all supplies in Cone Bros. Contracting Co. order book; that he was paid by Cone Bros. Contracting Co., and that he assumed he was working for Cone Bros. Contracting Co., because he was paid by them.
“Mr. McNeill further testified that on May 14, 1954, he signed, as Vice-President of Pan-American Construction Co. the letter offered in evidence as Cone Bros. ‘Exhibit No. 2’, that Mr. Dickerson dictated the letter, and that he signed it in order to secure a release of any obligations there might be of Pan-American Construction Co.; that he was shown the original letter signed by Mr. Hampton, that he was unschooled in the law and did not know what effect such letter might have on Pan-American Construction Co., and that he thought the quickest and easiest way to relieve Pan-American Construction Co. of any liability or responsibility was to sign the letter of May 14.
“In summation, it appears that Cone Bros. Contracting Co., if it subcontracted the asphalt work with any one, did so with John C. Dickerson and J. B. Hampton; that Cone Bros. Contracting Co. knew that John C. Dickerson had several corporations and presumed that Pan-American Construction Co. was one of them; that Cone Bros. Contracting Co. put no great value on Pan-American Construction Co. being a party to any agreement, and was not particularly induced to enter into any agreement because Pan-American Construction Co. was a party; that there is no evidence that any benefit ever accrued to Pan-American Construction Co., by reason of any purported agreement; that the only evidence of Pan-American Construction Co. being connected in any way with the construction project in Osceola County is the connection of Mr. J. M. McNeill with the project. It is my opinion that no *543 contract between Cone Bros. Contracting Co. and Pan-American Construction Co. was ever entered into; that Pan-American Construction Co. did not ratify any such contract by any action on its part; that it received no benefit from any such purported contract; that it had no equipment on the job and carried no payroll on the project; that the letter signed by J. M. McNeill, dated May 14, 1954, and being Cone Bros. ‘Exhibit No. 2’, in the light of the overwhelming evidence to the contrary, does not ratify a non-existing agreement.”
The following are the pertinent portions of the compensation order entered by the full commission:
“The deputy commissioner held that Cone Brothers Contracting Company was the employer of the claimant. We fail, however, to find in the record any evidence pointing to control over the claimant by Cone. On the contrary, the evidence is undisputed that Cone Brothers, pursuant to a purported contract, divorced itself from control over this project. The fact that the Cone Company paid the men does not tend to prove control because the purported contract itself required the Cone Company to advance the money to meet the payroll, said advances to be charged against future contract payments by Cone to Pan-American. The purported contract required Cone to furnish only the hauling equipment. Consistent with the agreement, such equipment, and none other was supplied by Cone. The remaining equipment, including the plant, was moved in by Hampton for operations. Though in fact owned by Dickerson, the record discloses a close working arrangement between Dickerson and Pan-American.
“In the opinion of the Commission, it is not necessary to determine whether Hampton had authority or not to negotiate for and enter into a contract binding Pan-American. It is undisputed from the evidence that McNeill, vice-president of Pan-American, ratified the agreement of March 29, 1954. Pan-American was a subcontractor, hired the claimant, and had secured compensation coverage. Accordingly, it is liable for benefits under the Act with respect to claimant’s injuries.”
It is evident that the full commission was of the view that, as a matter of law, the letter dated May 14, 1954, and signed by J. M. McNeill as Vice-President of Pan-American Construction Company constituted a ratification of the putative agreement between Cone Bros. Contracting Co. and J. B. Hampton.
We cannot attach such legal consequences to this document. The letter referred to a pre-existing contract, it is true, but sought a cancellation of it, and a release of Pan-American from “all responsibility in connection with this project”, which was granted. This, without more, did not amount to an express affirmance upon which ratification might be based. At the most, it was intended to terminate obligations between the parties, if any there were. Nor could it have been construed as an affirmance by acquiescence or estoppel, because the record is barren of evidence of any “conduct of the purported principal manifesting that he consents to be a party to the transaction” or “conduct justifiable only if there is ratification”, Restatement of Agency, Sec. 93(1). Cf. Chapman v. St. Stephens Protestant Episcopal Church, 105 Fla. 683, 136 So. 238, 145 So. 757, where all work performed was obviously done pursuant to a contract, the officers of the church, who were in possession of all the material facts, watched the work throughout its performance, and we held that such officers could not later be heard to say that they had not ratified the previously unauthorized contract.
A further objection to the conclusion reached by the full commission lies in the failure of this record to sustain the proposition that J. M. McNeill was authorized to bind Pan-American as its agent. His signature as vice-president is the only *544 scintilla of evidence pointing in the direction of authorization. We have held that in a proper case the signature of the president of a corporation may bind the corporation, under the doctrine of inherent powers. Miami Jockey Club v. Lillias Piper, Inc., 115 Fla. 612, 155 So. 806; E. O. Painter Fertilizer Co. v. Boyd, 93 Fla. 354, 114 So. 444; Cotton States Belting & Supply Co. v. Florida R. Co., 69 Fla. 52, 67 So. 568. These powers are “in reality one form of apparent powers, i. e., powers apparent from the very nature of the office”. Fletcher Cyc. Corporations, Vol. 2, Sec. 438, pp. 324-5. The vice-president of a corporation, in the ordinary case, does not per se possess the inherent powers of the president unless he is acting in the president’s absence, disability or death. 19 C.J.S., Corporations, § 753. The permissible scope of his apparent authority is correspondingly restricted. And in this case the proved course of dealing between the parties distinctly negatives the creation of any appearance of authority, on McNeill’s part, to breathe life into the purported agreement on behalf of Pan-American. No action was taken by third parties in reliance upon McNeill’s signature as vice-president, nor did any benefit accrue to Pan-American as a result of McNeill’s action, as the Deputy Commissioner concluded.
The name of John .C. Dickerson is of frequent appearance in this record, but this individual is not shown to have been an .■fficer or agent of Pan-American, authorized to execute any contract on behalf of said corporation or to ratify the purported contract between Cone Bros. Contracting Co. and Hampton. The commission may have entertained the view that the record suggests, as perhaps it'does, that Dickerson either acts for, owns or controls Pan-American, but proof of such fact is woefully lacking. If a “fine Italian hand” played any part in this transaction, the evidence herein fails to identify its possessor.
We are of the opinion that the findings of the Deputy Commissioner were supported by competent substantial evidence, and that the conclusions which he reached therefrom were’ correct in law. It follows that the petition for writ of certio-rari should be granted and the challenged order quashed.
It is so ordered.-
-DREW, C. J., and THORNAL and SE-BRING, JJ., concur.