MARTIN, Circuit Judge,
dissenting:
I agree with the Majority that this case turns on the existence and scope of the principal-agent relationship between the Board and Chairman Adams. I also agree that the Board intended to create an agency relationship and that in delegating to Chairman Adams the authority to execute the NWQ Investments contract, the Board empowered Chairman Adams to take incidental actions necessary to achieve that end. However, I cannot agree with the Majority’s conclusion that this delegation empowered Chairman Adams to fundamentally amend unrelated and preexisting contractual relationships. Because such a result is neither consistent with the established doctrine of implied actual authority nor -supported by the record before us, I respectfully dissent.
In short, I believe the Board delegated far less authority to Chairman Adams than does the Majority. Under the doctrine of implied actual authority, the scope of an agent’s authority is limited to only that expressly conferred in the delegation itself, together with that which is incidental to, usually accompanies, or reasonably necessary to effect the principal’s desired outcome. 2 Fla. Jur.2d Agency & Employment § 47 (2010); Restatement (Third) of Agency § 2.02 cmt. d (2006) (“If a principal’s manifestation to an agent expresses the principal’s wish that something be done, it is natural to assume that the principal wishes, as an incidental matter, that the agent take the steps necessary and that the agent proceed in the usual and ordinary way ....”); Union Camp Corp. v. Dyal, 460 F.2d 678, 687 (5th Cir.1972) (invalidating sale of property by agent where sale was not incidental to the delegation and there was “no evidence that [the land owners] desired [the sales].”).[1]
Based on these principles, the Majority’s opinion is correct only if renegotiation of the unrelated Citigroup agreement was incidental to or necessary to effecting the NWQ Investments contract. The problem for the Majority is that the record does not support this conclusion. The Majority is thus left to argue that the decision of the district court should not stand because “there ... is nothing unusual about an arbitration clause ... that requires arbitration of all disputes between the parties to an agreement.” Majority Op. 1343. *1345 Never mind that the Majority’s precedent for this point is readily distinguishable,[2] the record before us is clear that in the context of the consulting agreement to these parties such a clause was highly unusual. As a result, under the appropriate fact specific inquiry as to the scope of an agent’s implied authority, see Gadsden County Tobacco Co. v. Corry, 103 Fla. 217, 137 So. 255, 257-58 (1931); Bradley v. Waldrop, 611 So.2d 31, 32 (Fla. 1st DCA 1992), I conclude that the Board did not delegate to Chairman Adams the authority to amend the preexisting consulting agreement.
The record is also clear that Chairman Adams lacked any apparent authority to amend the consulting contract. For apparent authority to have existed, the Board must have held Adams out as having the authority to amend the consulting contract and Citigroup must have reasonably relied on that appearance. See Cambridge Credit Counseling Corp. v. 7100 Fairway, LLC, 993 So.2d 86, 90 (Fla. 4th DCA 2008). To the extent that the Board held Chairman Adams out as having such authority, however, Citigroup’s reliance, if any, was not reasonable. It was intimately involved in the Board’s deliberations over the previously existing consulting contract and thus knew or should have known that Adams alone could not effectuate a material change to the contract by inserting an arbitration clause. See Palafrugell Holdings, Inc. v. Cassel, 940 So.2d 492, 494 (Fla. 3d DCA 2006) (party seeking to rely upon the representations of an agent has duty to inquire further where representations are “facially contrary to the interests” of principal).
I am thus persuaded that Chairman Adams lacked the authority to insert the disputed arbitration provision into the preexisting consulting agreement. This being the case, the Board is not bound to arbitrate this or any other disputes arising from the underlying consulting agreement.[3]
For these reasons, I respectfully dissent from the Majority’s opinion. Rather than overturn the well-reasoned conclusions of the district court, I would affirm that *1346 court’s order and permit this action to proceed in district court. This result is not only consistent with the settled expectations of both parties, but more importantly is in accord with long settled principles of agency law that clearly limit the scope of the implied actual authority at issue here.

. In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc) we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

. In particular, the Majority’s reliance on 99 Commercial St., Inc. v. Goldberg, 811 F.Supp. 900, 907 (S.D.N.Y.1993), is misplaced. See Majority Op. 1343. In that case, then-Judge Sotomayor held that in agreeing to a broadly worded arbitration clause in a new account agreement, an agent subjected a previously opened account with the same brokerage company'to arbitration. 811 F.Supp. at 907. Unlike in this case, however, the accounts at issue in 99 Commercial St. all related to a single mortgage transaction. Id. at 903. Further, it strikes me that the opinion does nothing to grapple with defining the scope of the agent's implied authority, suggesting that this issue was not even before the court. See id. at 907. Therefore, 99 Commercial St. does not speak to the crucial issue before us in this case, which is whether Chairman Adams possessed the requisite implied actual authority in the first place.

. By resolving this appeal on. the issue of the scope of Chairman Adams’s authority, I would not reach the question of whether Florida Sunshine Law or state and local administrative law deprived Adams of legal authority to amend the consulting contracts. See Majority Op. 1341-42. However, to the extent this issue bears on the resolution of this case, I must express my reservations regarding the majority’s reliance, id., on Killearn Properties, Inc. v. City of Tallahassee, 366 So.2d 172, 181 (Fla. 1st DCA 1979). Both legally and factually, Killeam is distinguishable from the case before this Court. First, Killeam is actually a case about estoppel, not implied authority, see 366 So.2d at 177-82, and therefore its guidance regarding Florida Sunshine Laws is limited at best. Second, the record in Killeam evinced substantial and detrimental reliance on the part of the plaintiff that is not found in the present case. Id. at 174. Thus, I do not agree that Killeam forecloses any arguments regarding the significance of the Florida Sunshine Law. See Majority Op. 1341-42.